Harold G. O'BRIEN et al.

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a National Banking Association.

CHICAGO HOTEL EMPLOYEES PENSION TRUST FUND

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a National Banking Association,

and

Continental Illinois Investment Trust for Employee Benefit Plans, an Illinois Trust.

Benjamin LIPSON et al.

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a National Banking Association.

Edward F. BRABEC et al.

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a National Banking Association.

J. J. O'DONNELL, as President of and for and on behalf of the members of the Air Line Pilots Association, International, an unincorporated association, et al.

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a National Banking Association.

Patrick E. GORMAN et al.

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a National Banking Association.

KENCO, INC., an Illinois Corporation, et al.

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a National Banking Association.

Nos. 72-C-2251, 73-C-46, 73-C-660, 74-C-2899, 73-C-772, 73-C-3132 and 73-C-1755.

United States District Court, N. D. Illinois, E. D.

April 25, 1977.

Mayer, Brown & Platt, Chicago, Ill., for defendants.

James S. Gordon, A. Bradley Eben, Jerry Kronenberg, Borovsky, Smetana, Ehrlich & Kronenberg, Chicago, Ill., for plaintiffs in No. 72–C–2251.

James S. Gordon, Chicago, Ill., for plaintiffs in Nos. 73–C–46 and 73–C–660.

James S. Gordon, A. Bradley Eben, Herbert L. Borovsky, Borovsky, Smetana, Ehrlich & Kronenberg, Sherman M. Carmell, Sheldon M. Charone, Chicago, Ill., for plaintiffs in No. 74–C–2899.

Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for plaintiffs in Nos. 73–C–772 and 73–C–3132.

Pope, Ballard, Shepard & Fowle, Chicago, Ill., for plaintiffs in No. 73–C–1755.

## MEMORANDUM OPINION

FLAUM, District Judge:

Before the court is defendant's motion to reconsider Judge McGarr's May 10, 1974 order denying defendant's motion to dismiss plaintiffs' complaints in causes 72 C 2551, 73 C 46, 73 C 660, 73 C 772, and 73 C 3132. Defendant has also moved to dismiss in cases 74 C 2899 and 73 C 1755, which have been consolidated with the aforementioned actions.

The relevant facts are as follows: In all seven cases,[1] plaintiffs are either beneficiaries of trusts, or principals in agency relationships, in which defendant, Continental National Bank and Trust Company of Chicago ("Continental") is the trustee or agent.[2] All the complaints allege that the trust agreements between the parties are "discretionary" in nature with the trustee given complete discretion in making all investment decisions for the trust res, subject, of course, to a fiduciary's duty of due care. Plaintiffs allege that Continental has committed various violations of the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. § 240.-10b–5, promulgated thereunder, as well as violations of state common law. These violations are premised on plaintiffs' allegations that Continental, in administering the different trusts, breached its fiduciary duty as trustee to the beneficiaries/plaintiffs by investing substantial sums of the trusts' funds in securities issued by corporations to which Continental, in its capacity as a commercial lender, had loaned large amounts of money. Plaintiffs contend that Continental, in its capacity as a commercial lender, obtained inside information concerning the aforementioned corporations which indicated that investment in their securities would be unwise. Plaintiffs claim that the

---

1. The cases before the court involve the same general factual situations although they differ in certain irrelevant particulars. See Judge McGarr's May 10, 1974 order reported in [1973–74 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,565, at 95,956–58 (N.D.Ill.1974).

2. The fact that some complaints allege trust relationships, while the others allege agencies, is irrelevant to the determination of the pending motions. Although the labels of the relationships differ, they all resemble trust arrangements and this court shall hereinafter refer to plaintiffs as beneficiaries and to defendant as trustee.

purchases and retention for the trusts of securities issued by corporations to which Continental had outstanding loans were improper because they were made:

(1) without disclosure to plaintiffs by Continental of its conflict of interest;

(2) without disclosure of inside information Continental obtained indicating the financial difficulties of the corporations issuing the securities; and

(3) with the knowledge of Continental that the securities were poor risks and with the intention of protecting its own investments in the financially troubled companies.[3]

Plaintiffs further allege that had they been aware of this material information, and but for defendant's fraudulent scheme, they would have ended their trust arrangements with defendant and not purchased or retained the securities in issue.

In support of its request for dismissal of plaintiffs' complaints, Continental relies primarily on the Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), and the recent decision in *Santa Fe Indus., Inc. v. Green,* —— U.S. ——, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Defendant argues first that, as trust beneficiaries, plaintiffs are not "purchasers or sellers" of securities and therefore lack "standing" to claim that defendant's operation of plaintiffs' trust accounts violated section 10(b) and rule 10b–5.[4] Second, defendant contends that plaintiffs' complaints merely allege breaches of Continental's fiduciary duty to plaintiffs and that these claims are not cognizable under rule 10b–5. And, since there is no independent subject matter jurisdiction over plaintiffs' state law claims,

Continental contends that plaintiffs' complaints must be dismissed in their entirety.

While this court does not agree with defendant's position that *Blue Chip Stamps* mandates that in all situations a trust beneficiary lacks standing to sue his trustee under rule 10b–5, *see James v. Gerber Products Co.,* 483 F.2d 944 (6th Cir. 1973) (standing granted); *Klamberg v. Roth,* 425 F.Supp. 440 (S.D.N.Y.1976) (post-*Blue Chip Stamps;* standing granted), this court is compelled to agree with defendant's contention that *Blue Chip Stamps* and *Green* bar plaintiffs from proceeding with their 10b–5 allegations in their complaints. These decisions[5] place a new gloss on section 10(b) and rule 10b–5 actions requiring the courts to scrutinize with great care the appropriateness of a federal securities law remedy for certain conduct by defendants. The Supreme Court in recent decisions has adopted a more limited approach to section 10(b) and rule 10b–5, and this limited approach leads this court to the conclusion that plaintiffs' allegations fail to state claims for relief under rule 10b–5. Therefore, defendant's motion to reconsider the May 10, 1974 order in this cause and its motion to dismiss plaintiffs' 10b–5 claims must be granted.

In their complaints, plaintiffs raise three types of claims under the federal securities laws: (1) that Continental fraudulently "retained" securities it knew it should have sold; (2) that Continental failed to "disclose" to plaintiffs certain inside information it had obtained and the existence of the conflict of interest defendant faced as trustee and commercial lender prior to Continental's purchase of securities for plaintiffs' accounts;[6] and (3) that Continental de-

---

**3.** For example, in the *Kenco* case, 73 C 1755, plaintiffs allege that Continental had made a $20 million loan to Interway Corporation and thereupon bought a $3.5 million note for the account of plaintiffs which was subordinated to Continental's loan. *See* Complaint ¶ 8, in 73 C 1755.

**4.** Defendant also argues that this court lacks jurisdiction over plaintiffs' securities laws claims because of the "primary jurisdiction"

doctrine. However, this court does not have to reach this issue in the cases at bar.

**5.** *See also Piper v. Chris-Craft Indus., Inc.,* —— U.S. ——, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

**6.** Plaintiffs have not sought to claim that the mere existence of the conflict of interest de-

frauded plaintiffs by purchasing securities for plaintiffs' accounts knowing the securities to be of high risk and unworthy of investment in order to protect defendant's own interests in the corporate issuers of the securities.

■ First, *Blue Chip Stamps* has made it clear that plaintiffs may not maintain their 10b–5 claims of fraudulent "retention" of securities since as to these allegations plaintiffs are not the "purchasers or sellers" of securities. In adopting the "purchaser or seller" requirement for 10b–5 actions first enunciated in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), the Supreme Court delineated three categories of 10b–5 plaintiffs who did not have standing to proceed with their claims. 421 U.S. at 737–38, 95 S.Ct. 1917. The second category consisted of

> actual shareholders in the issuer who allege that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material.

*Id.* Plaintiffs' allegations of fraudulent retention fall within this second category and therefore must be dismissed. *See Marsh v. Armada Corp.*, 533 F.2d 978 (6th Cir. 1976), *cert. denied*, —— U.S. ——, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1976); *Williams v. Sinclair*, 529 F.2d 1383 (9th Cir. 1975).

■ Second, as to plaintiffs' allegations of "nondisclosure" of material information, plaintiffs have failed to allege that these nondisclosures were in fact "in connection with" or material to their purchases of the securities in issue as required by rule 10b–5. *See Superintendent of Ins. of New York v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). As

plaintiffs admit in their complaints, the trusts established with the defendant are "discretionary" in nature, vesting complete investment decision authority in Continental. Under the trust agreements, Continental was under no obligation to consult with plaintiffs prior to making any investment. While plaintiffs did retain the right to ratify or disapprove defendant's decisions, any information obtained by plaintiffs relative to these decisions to purchase would be *ex post* the actual purchase and give rise to complaints concerning improper "retention" of securities, claims, as stated previously, plaintiffs cannot raise under rule 10b–5.[7] Even if the plaintiffs were aware of all the facts, the defendant still could have purchased the securities in issue. Thus, plaintiffs' claims of "nondisclosure" are really "in connection with" plaintiffs' decision to retain or remove Continental as trustee, and have no relation to the plaintiffs becoming the owners of securities.

■ This result and analysis is in accord with the purpose of rule 10b–5 to insure that all persons making investment decisions have full and accurate information concerning the securities subject to a transaction. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Unlike *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167 (2d Cir. 1970), in which the Second Circuit recognized a 10b–5 action against a stock broker for failure to disclose to plaintiff to whom it sold securities that the broker was "making market" in the securities,[8] in the cases at bar, there was no investment decision to be made by plaintiffs and no such investments were affected by any lack of information on plaintiffs part. The "mar-

---

fendant faced states a 10b–5 cause of action. Plaintiffs' Memorandum in Opposition to Defendant's Motion to Reconsider at 49–50. In light of *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), and its rejection of a mere negligence 10b–5 action, it appears such a claim would fail as not adequately alleging an intentional "fraud."

**7.** *See Rich v. Touche Ross & Co.,* 415 F.Supp. 95 (S.D.N.Y.1976), in which the district court

held that an accountant's fraud in getting plaintiff to leave its securities with a certain broker was not "in connection with" the purchase or sale of a security but in connection with the plaintiff's decision to continue the bailment.

**8.** In *Chasins,* a nondiscretionary account was involved leaving all investment decisions to plaintiff.

ket transactions" in the cases at bar were pure.[9] the trust relationships allegedly were not. Rule 10b–5, however, protects the former and not the latter.

■ Therefore, this court refuses to read into all discretionary trusts, pursuant to rule 10b–5, a requirement that trustees inform their beneficiaries of information prior to making investments totally within the trustees' discretion. In such situations, failure to disclose material information is simply not "in connection with" any purchase or sale of a security and is not material to any investment decision made by plaintiffs. *Santa Fe Indus., Inc. v. Green,* —— U.S. ——, —— n.14, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

■ Finally, in regard to plaintiffs' allegations that Continental defrauded them by knowingly purchasing high risk securities for their trust accounts and in order to protect its own interests as a commercial lender, the landmark decision in *Santa Fe Indus., Inc. v. Green, supra,* compels the conclusion that plaintiffs' fraud counts fail to state claims for relief under section 10(b) since they merely allege breaches by Continental of its fiduciary duty of care in purchasing securities for plaintiffs. In *Green,* the Supreme Court held that a "short-form merger," in which minority shareholders were forced to sell their shares even though there was no valid reason for the merger, was not the type of fraud on the seller of securities cognizable under rule 10b–5. In addressing the facts before it, the Court stated that in order for a fraud in connection with the purchase or sale of a security to state a 10b–5 claim, the fraud has to constitute a "deceptive" or "manipulative" device. —— U.S. at ——–——, 97 S.Ct. 1292. Thus, the Court held that frauds which constituted mere breaches of fiduciary duties would not violate rule 10b–5 unless they involved "omissions" or "misstatements" of information constituting a deception, or "manipulations" which the Court defined as "practices, such as wash

sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Id.* at ——, 97 S.Ct. at 1302.

■ In the cases at bar, plaintiffs' allegations of fraud do not constitute deceptions or manipulations as those terms are defined above. No "deceptions" are alleged since in plaintiffs' allegations of Continental's purchase of high risk securities to protect its own interests, there are no allegations of omissions or misstatements of information. As stated previously, prior to Continental's purchase of securities for plaintiffs' accounts, Continental was under no requirement to communicate to plaintiffs concerning its investment decisions. Moreover, no manipulative devices are alleged since the knowing purchase of high risk securities by a fiduciary to protect its own interests in the issuer of the securities is not that type of device which artificially affects market activity. "Manipulation," as the Court states, is a "term of art," *id.* at ——, 97 S.Ct. 1292, and its narrow scope does not include ordinary types of breaches of fiduciary duties by trustees in purchasing securities for their beneficiaries' accounts.

This court recognizes that the facts in the cases at bar differ from the "short-form merger" situation before the Supreme Court in *Green.* Nevertheless, the Court in *Green* has made it clear that especially when a state court remedy exists for the type of fraud alleged by a 10b–5 plaintiff, *id.* at ——, 97 S.Ct. 1292, and where the type of fraud alleged is not unique to the operation of the securities market, that courts should be hesitant in expanding rule 10b–5's reach. The Court has simply stated that Congress, in enacting section 10(b), and the courts, in interpreting the scope of a private right of action thereunder, do not mean for that statute to have such a broad and pervasive scope.

Accordingly, plaintiffs' section 10(b) and rule 10b–5 claims must be dismissed and the

---

**9.** There is no allegation that the corporations failed to disclose to plaintiffs' trustee, the defendant, all material information concerning the securities in issue. Thus, both actual parties to the sale were privy to all relevant information.

May 10, 1974 order vacated. Moreover, pursuant to Fed.R.Civ.P. 54(b), there being no just cause for delay, final judgment is entered on plaintiffs' dismissed 10b–5 claims. This court does not, however, dismiss these causes in their entirety since the parties have requested an opportunity to brief the issue of whether under the doctrine of "pendent jurisdiction" this court should continue to hear the state law claims raised by plaintiffs. Therefore, defendant is granted ten (10) days to file a brief in support of dismissal of the state claims, and plaintiffs are given ten (10) days to respond with five (5) days to reply by defendant. Until this issue is decided, this court shall stay its ruling on plaintiffs' motion to strike defendant's affirmative defenses.

It is so ordered.