438 F.Supp. 803 (1977)
Charles B. BLACKMAR, Trustee of Liberty's Investment for Employees; Charles B. Blackmar, Trustee of Incentive Trust, Plaintiff,
v.
David B. LICHTENSTEIN, Sr., William A. Gerard, Lyle S. Woodcock, Sidney N. Held, David B. Lichtenstein, Jr., Oscar H. Love, Carl A. Algren, American National Bank in St. Louis, Defendants.
No. 76-685C(3).
United States District Court, E. D. Missouri, E. D.
September 26, 1977.
Albert H. Hamel, William I. Rutherford, Stephen K. Lambright, John Fox Arnold, Lashly, Caruthers, Thies, Rava & Hamel, Clayton, Mo., for plaintiff.
Robert H. Brownlee, Thompson & Mitchell, St. Louis, Mo., T. N. Pool, Garrett, Pool & Coldiron, Del City, Okl., for intervenors Yarger, Lippert & Mullinax.
Robert S. Allen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for David B. Lichtenstein, Sr. & Jr.
Harold C. Gaebe, Thompson, Walther, Sheumaker & Gaebe, St. Louis, Mo., for American Natl. Bk.
Richard B. Scherrer, Walter M. Clark, Thomas E. Wack, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for Gerard, Woodcock, Held, Love & Algren.
*804 John Gianoulakis, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., for movants Best & Knox for motion for substitution.
Carroll J. Donohue, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., Special Atty. for movants for purpose of substitution only.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon a variety of motions filed by parties to the suit, proposed intervenors, and by individuals seeking to be substituted for the named plaintiff. Plaintiff, Charles Blackmar, was, at the time that this suit was filed, a successor trustee under a profit sharing trust existing for the benefit of Liberty Loan Corporation employees, known as "Liberty's Investment For Employees". Plaintiff was also, at the time suit was filed, a successor trustee under another profit sharing trust existing for the benefit of Liberty Loan Corporation employees known as Liberty's "Incentive Trust". Defendants David B. Lichtenstein, Sr., William A. Gerard, Lyle S. Woodcock, Sidney N. Held and David B. Lichtenstein, Jr. were trustees under both trusts prior to plaintiff's appointment. Defendants Oscar H. Love and Carl A. Algren are former trustees of the "Incentive Trust" only. Plaintiff also names as defendant, American National Bank, a person allegedly controlled by the other named defendants. In Counts I and III of the complaint, plaintiff bases the jurisdiction of this Court upon 15 U.S.C. § 78aa for violations of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Counts II and IV are based on the doctrine of pendent jurisdiction.
Count I concerns the trust known as "Liberty's Investment for Employees" referred to as the LIFE Trust. Plaintiff alleges that defendant trustees directed and authorized the purchase of Liberty Loan Corporation stock by the LIFE Trust for the purpose of
(a) Supporting and maintaining the price of the stock at an artificially high level, thereby maintaining the price and value of Liberty Loan Corporation stock held by them as individuals and held by their associates, affiliates and members of their families.
(b) Supporting and maintaining the price of the stock at an artificially high level in order to enhance the value of Liberty Loan Corporation stock for use in corporate mergers and acquisitions so as to enhance the value of stock held by them as individuals and held by their associates, affiliates and members of their families.
(c) Maintaining and increasing their control of Liberty Loan Corporation by increasing the holdings of the LIFE Trust in Liberty Loan Corporation stock and voting the stock in support of their policies as a management group in control of Liberty Loan Corporation.
Plaintiff further alleges that defendant trustees authorized the LIFE Trust to make loans through defendant American National Bank, controlled by defendants Lichtenstein. Plaintiff alleges that defendants authorized the purchases of Liberty Loan Corporation stock without regard for diversification of trust investments and caused the LIFE Trust to borrow money to purchase said stock so as to support the price of the stock. Plaintiff summarizes by alleging that
The purchases by the defendant trustees of Liberty Loan Corporation stock for the LIFE Trust for the purpose of supporting and maintaining the market price and maintaining and increasing the control of Liberty Loan Corporation, the use of borrowed funds, including borrowings from defendant American National Bank in St. Louis, the persistent refusal to diversify, and the continued purchases and borrowings to purchase Liberty Loan Corporation stock in a severely declining market, constitute a device, scheme or artifice to defraud and a series of wrongful acts, practices and courses of business which operate and have been operating as a *805 fraud and deceit upon the beneficiaries of the LIFE Trust. The defendant trustees have wrongfully and fraudulently failed to disclose the material facts of their device, scheme and artifice to defraud and their wrongful acts, practices and course of business . . .
Plaintiff further alleges that defendant trustees have a beneficial interest in the "Incentive Trust" and thus utilized the funds and assets of the LIFE Trust first to achieve their objectives, utilizing the assets of the "Incentive Trust" only when the funds and assets of the LIFE Trust had been exhausted. Count II of the complaint, premised on the doctrine of pendent jurisdiction, alleges a breach of fiduciary duty on the part of defendants arising out of the above-recited facts.
Count III concerns the "Incentive Trust". Jurisdiction is again premised on 15 U.S.C. § 78aa for violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Plaintiff again alleges that defendant trustees authorized purchases of Liberty Loan Corporation stock by the "Incentive Trust" for the purpose of
(a) Supporting and maintaining the price of the stock at an artificially high level, thereby maintaining the price and value of Liberty Loan Corporation stock held by them as individuals and held by their associates, affiliates and members of their families.
(b) Supporting and maintaining the price of the stock at an artificially high level in order to enhance the value of Liberty Loan Corporation stock for use in corporate mergers and acquisitions so as to enhance the value of stock held by them as individuals and held by their associates, affiliates and members of their families.
(c) Maintaining and increasing their control of Liberty Loan Corporation by increasing the holdings of the INCENTIVE Trust in Liberty Loan Corporation stock and voting the stock in support of their policies as a management group in control of Liberty Loan Corporation.
Plaintiff alleges that defendants authorized the "Incentive Trust" to make loans so as to purchase Liberty Loan Corporation stock in an effort to raise the price of such stock. Plaintiff alleges that these loans were achieved through the utilization of defendant American National Bank, with stock of the Liberty Loan Corporation used as collateral. Plaintiff alleges that defendants Lichtenstein control defendant Bank. Plaintiff alleges that defendants failed to diversify the trust investments and continued to purchase the stock of Liberty Loan Corporation notwithstanding a market decline. Plaintiff summarizes by claiming that:
The purchases by the defendant trustees of Liberty Loan Corporation stock for the INCENTIVE Trust for the purpose of supporting and maintaining the market price and maintaining and increasing the control of Liberty Loan Corporation, the use of borrowed funds, including borrowings from defendant American National Bank in St. Louis, the persistent refusal to diversify, and the continued purchases and borrowings to purchase Liberty Loan Corporation stock in a severely declining market, constitute a device, scheme or artifice to defraud and a series of wrongful acts, practices and courses of business which operate and have been operating as a fraud and deceit upon the beneficiaries of the INCENTIVE Trust. The defendant trustees have wrongfully and fraudulently failed to disclose the material facts of their device, scheme and artifice to defraud and their wrongful acts, practices and course of business as alleged . . .
Plaintiff alleges that defendant trustees, having a beneficial interest in the "Incentive Trust" utilized the funds and assets of the LIFE Trust as part of the manipulative and deceptive device to support the price of Liberty Loan Corporation stock, and that they first utilized the funds and assets of the LIFE Trust, in which they had no beneficial interest to implement the same. Count IV, based on the doctrine of pendent jurisdiction, alleges breaches of fiduciary *806 duties arising out of the above-stated claims.
Defendant American National Bank seeks to dismiss Counts I and III as to it. Defendant Bank is not named in Counts II and IV. A complaint alleging violations of § 10(b) and Rule 10b-5 must comply with Rule 9, Federal Rules of Civil Procedure, Lewis v. Varnes, 368 F.Supp. 45 (S.D.N.Y. 1974); Walling v. Beverly Enterprises, 476 F.2d 393 (9th Cir. 1973). Plaintiff has failed herein to allege defendant Bank's involvement with the required specificity. The assertion that defendant Bank was controlled by some of the other defendants is not supported by any allegations of fact. Just as the facts underlying allegations of aiding and abetting must be pleaded with specificity, see Muth v. Dechert, Price & Rhoads, 391 F.Supp. 935 (E.D.Pa.1975), so this Court concludes that allegations of control must be similarly pleaded. Cf., Angelakis v. Churchill Management Corporation, 1975-1976 CCH Fed.Sec.Law Rep. ¶ 95,285 (N.D.Cal.1975); Aid Auto Stores, Inc. v. Cannon, 1975-1976 CCH Fed.Sec.Law Rep. ¶ 95,247 (S.D.N.Y.1975).
Defendants Lichtenstein Sr., Lichtenstein Jr., Gerard, Woodcock, Love, Held and Algren have moved to dismiss the complaint for failure to state a claim, for lack of subject matter jurisdiction and for lack of standing. These defendants contend that standing is lacking because plaintiff is not a purchaser or seller of securities. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); Birnbaum v. Newport Steel Corporation, 193 F.2d 461 (2d Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Because of the Court's belief that the complaint fails to state a claim, the Court will assume that plaintiff does have standing. See James v. Gerber Products Company, 483 F.2d 944 (6th Cir. 1973); Klamberg v. Roth, 425 F.Supp. 440 (S.D.N. Y.1976); Selzer v. Bank of Bermuda Ltd., 385 F.Supp. 415 (S.D.N.Y.1974); Heyman v. Heyman, 356 F.Supp. 958 (S.D.N.Y.1973), all holding that a beneficiary of a trust has standing to sue the trustee for violations of § 10(b) and Rule 10b-5 in connection with the purchase or sale of securities by the trust.
In Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Court held that a breach of fiduciary duty by majority shareholders in connection with a merger pursuant to the Delaware "short-form merger" statute did not constitute a violation of § 10(b) or Rule 10b-5. The Court emphasized that corporate mismanagement did not necessarily constitute a violation of the securities laws and stated that:
"Manipulation" is "virtually a term of art when used in connection with securities markets." [citation omitted] The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity. . . . No doubt Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices. But we do not think it would have chosen this "term of art" if it had meant to bring within the scope of § 10(b) instances of corporate mismanagement such as this, in which the essence of the complaint is that shareholders were treated unfairly by a fiduciary. Id. at 476, 97 S.Ct. at 1302.
Subsequent to this decision, in O'Brien v. Continental Illinois National Bank and Trust Company of Chicago, 431 F.Supp. 292 (N.D.Ill.1977), the court dismissed a complaint in which plaintiff-beneficiaries under a trust alleged that the trustee violated § 10(b) and Rule 10(b)-5 by investing funds in securities issued by corporations to which the trustee, a bank, had loaned large amounts of money. The court summarized the complaint as follows:
. . . plaintiffs raise three types of claims under the federal securities laws: (1) that Continental fraudulently "retained" securities it knew it should have sold; (2) that Continental failed to "disclose to plaintiffs certain inside information it had obtained and the existence of the conflict of interest defendant faced as *807 trustee and commercial lender prior to Continental's purchase of securities for plaintiffs' accounts; and (3) that Continental defrauded plaintiffs by purchasing securities for plaintiffs' accounts knowing the securities to be of high risk and unworthy of investment in order to protect defendant's own interests in the corporate issuers of securities. Id. at 295-96. [emphasis added].
In O'Brien, the trustees were given discretionary power to purchase securities, subject only to the beneficiaries' rights to ratify or disapprove the investment decision after it had been made. As a result, the court held that there could be no claim based on nondisclosure of facts since the "failure to disclose material information is simply not `in connection with' any purchase or sale of a security and is not material to any investment decision made by plaintiffs". Id. at 297. In the present case, both trusts provide:
The said Board of Trustees shall have full power and authority:
(a) to . . . invest and reinvest all or any part of the Fund in such stocks, common and preferred of any class . . as it may in its absolute discretion select and it may make and change such investments from time to time according to its discretion. The power and authority of the Board of Trustees to invest the Trust funds as hereinafter provided is subject to the right of the holders of fifty-one per cent (51%) of the outstanding shares to object in writing to any or all of the investments in which event the Trustees shall be required to change the investment to some other investment.
For the same reasons stated in O'Brien, this Court concludes that any claims based upon nondisclosure by the trustees would have to fail.
In O'Brien, the court rejected the claim made by the plaintiffs herein that defendant had purchased securities to protect its own loans to the issuing corporations:
. . . the Court [in Santa Fe Industries, Inc. v. Green, supra] held that frauds which constituted mere breaches of fiduciary duties would not violate rule 10b-5 unless they involved "omissions" or "misstatements" of information constituting a deception, or "manipulations" which the Court defined as "practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." . . . [Santa Fe Industries, Inc., supra] at 476, 97 S.Ct. 1302.
In the cases at bar, plaintiffs' allegations of fraud do not constitute deceptions or manipulations as those terms are defined above. No "deceptions" are alleged since in plaintiffs' allegations of Continental's purchase of high risk securities to protect its own interests, there are no allegations of omissions or misstatements of information. As stated previously, prior to Continental's purchase of securities for plaintiffs' accounts, Continental was under no requirement to communicate to plaintiffs concerning its investment decisions. Moreover, no manipulative devices are alleged since the knowing purchase of high risk securities by a fiduciary to protect its own interests in the issuer of the securities is not that type of device which artificially affects market activity. Id. at 297.
For the same reasons, the Court concludes that the present complaint must be dismissed. Plaintiff herein alleges that defendant trustees bought the stock of Liberty Loan Corporation to protect their own investments herein and to enhance their own position with relation to Liberty Loan Corporation. Essentially, this is the same claim that was made in the O'Brien case, supra. For the reasons stated therein, such allegations do not constitute a violation of the securities laws. Plaintiffs' claims relating to the failure to diversify clearly do not constitute violations of § 10(b) and Rule 10b-5; such claims amount to no more than an alleged breach of fiduciary duties.
Plaintiff has submitted, under seal, a proposed amended complaint. Leave to file the same has not been sought nor granted. *808 The Court has reviewed the complaint, however, and is of the opinion that the allegations made therein are insufficient, for the reasons stated herein, to survive the motions to dismiss filed by defendant Bank and some of the individual defendant trustees.
Because the motions to dismiss will be granted, the motions for leave to intervene, filed by certain beneficiaries, will be denied as moot. Cf., Mattice v. Meyer, 353 F.2d 316 (8th Cir. 1965). The remaining motions, filed by movants Best and Knox for substitution, by plaintiff Blackmar to join Liberty Loan Corporation as a defendant for the purposes of the motion for substitution, by plaintiff Blackmar for instructions, and by movants Best and Knox to strike and suppress because of privilege certain portions of plaintiff's filings in opposition to the motion for substitution, will be denied as moot. Those matters which were placed under seal because of the assertion of privilege shall remain sealed.
Appropriate orders will issue.