Harold G. O'BRIEN et al., Plaintiffs,

v.

CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY OF
CHICAGO, Defendant.

Edward T. HANLEY et al., Plaintiffs,

v.

CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY OF
CHICAGO, Defendant.

Benjamin A. LIPSON et al., Plaintiffs,

v.

CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY OF
CHICAGO, Defendant.

Edward F. BRABEC et al., Plaintiffs,

v.

CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY OF
CHICAGO, Defendant.

J. J. O'DONNELL et al., Plaintiffs,

v.

CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY OF
CHICAGO, Defendant.

Patrick E. GORMAN et al., Plaintiffs,

v.

CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY OF
CHICAGO, Defendant.

KENCO, INC., et al., Plaintiffs,

v.

CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY OF
CHICAGO, Defendant.

Nos. 72 C 2551, 73 C 46, 73 C 660, 74 C
2899, 73 C 772, 73 C 3132 and 73
C 1755.

United States District Court,
N. D. Illinois, E. D.

Nov. 28, 1977.

**1132**

James S. Gordon, Chicago, Ill., for plaintiffs in 72 C 2251, 74 C 2899, 73 C 46 and 73 C 660.

A. Bradley Eben, Borovsky, Smetana, Ehrlich & Kronenberg, Chicago, Ill., for plaintiffs in 72 C 2251 and 74 C 2899.

Jerry Kronenberg, Chicago, Ill., for plaintiffs in 72 C 2251.

Mayer, Brown & Platt, Chicago, Ill., for defendant.

Herbert Borovsky, Sherman Carmell, Sheldon Charone, Chicago, Ill., for plaintiffs in 74 C 2899.

Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for plaintiffs in 73 C 772 and 73 C 3132.

Pope, Ballard, Shepard & Fowle, Chicago, Ill., for plaintiffs in 73 C 1755.

## MEMORANDUM OPINION

FLAUM, District Judge:

These actions presently before the court were filed at various times during 1972 through 1974 and have been consolidated for various pretrial matters. All the cases are essentially similar in that they each allege violations by defendant of the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. § 240. 10b–5, promulgated thereunder, as well as Illinois common law. Basically,[1] plaintiffs allege that they are beneficiaries of various trusts of which defendant, Continental Illinois National Bank & Trust Co. of Chicago (Continental), is trustee. Plaintiffs

---

1. A complete description of the factual circumstances of these cases can be found in *O'Brien v. Continental Illinois Nat'l Bank & Trust Co. of* *Chicago*, 431 F.Supp. 292 (N.D.Ill.1977), *appeal pending.*

contend that Continental made unlawful purchases and sales of various securities for the plaintiffs' trusts and Continental violated the aforementioned federal statutes and Illinois law.

In an order dated May 10, 1974,[2] Judge McGarr, to whom these cases [3] were previously assigned, denied defendant Continental's motion to dismiss these cases holding that plaintiffs' complaints stated valid causes of action under section 10(b) and rule 10b–5. Thereafter the Supreme Court decided *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), and Continental moved to reconsider Judge McGarr's May 10, 1974 ruling. This court, having been reassigned the case, took defendant's motion to reconsider under advisement and delayed its ruling until the Supreme Court rendered its decision in *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). This court then, in an order dated May 24, 1977, reconsidered the May 10, 1974 ruling and, relying primarily on *Green*, granted Continental's motion to dismiss the federal securities claims raised in plaintiffs' complaints.[4] *O'Brien v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 431 F.Supp. 292 (N.D.Ill.1977), *appeal pending*. Thus, this court held that although plaintiffs, as beneficiaries of trusts, had standing to sue Continental for violations of section 10(b) or rule 10b–5, *id.* at 295, plaintiffs had

failed to allege that defendant made a material misstatement or omission to plaintiffs in connection with the purchase or sale of securities for plaintiffs' trusts. *Id.* at 296–97.[5]

Presently before the court is defendant's motion to dismiss the various state law claims alleged in plaintiffs' complaints on the ground of lack of subject matter jurisdiction.[6] Plaintiffs contend that this court has jurisdiction over the state law claims pursuant to the doctrine of "pendent jurisdiction," and the plaintiffs in *Lipson*, 73 C 660, the plaintiff Credit Union Nat'l Ass'n in *Brabec*, 74 C 2899, and the plaintiffs in *O'Donnell*, 73 C 772, argue that this court has jurisdiction over their state claims pursuant to 28 U.S.C. § 1332 diversity jurisdiction.[7] This court shall consider each issue raised seriatum.

## A. Pendent Jurisdiction

As stated previously, all plaintiffs presently before the court argue that this court has jurisdiction over their state law claims pursuant to the doctrine of pendent jurisdiction. Although the doctrine of pendent jurisdiction has a long and torturous history, *see generally* 3A J. Moore, Federal Practice ¶ 18.07[1.–2], at 1921–32 (1974); C. Wright & A. Miller, Federal Practice and Procedure § 3567, at 439–62 (1975), the appropriate starting point in any modern discussion of pendent jurisdiction is *United*

---

**2.** This order is published at [1973–74 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,565 (N.D.Ill. 1974).

**3.** Cases 74 C 2899 and 73 C 1755 were not consolidated with the other cases involved herein until after Judge McGarr's ruling.

**4.** This order included the federal claims in 74 C 2899 and 73 C 1755. *See* note 3 *supra*.

**5.** Subsequent to this court's May 24, 1977 order, plaintiffs moved to vacate that order and to reconsider that decision in light of the recent Seventh Circuit opinion in *Wright v. Heizer*, 560 F.2d 236 (7th Cir. 1977), as well as for leave to amend their complaints to allege scienter in accordance with the requirements of section 10(b) and rule 10b–5 as articulated in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). This court, in an order dated November 22, 1977 granted

the motions to vacate and to amend, but reinstituted judgement on the federal securities claims on defendant's behalf in accordance with the May 24, 1977 order holding that *Wright* did not affect this court's order. Thus, *Wright v. Heizer, supra*, involved a material misstatement or omission made to the ultimate decision maker *prior to* the decision maker's purchase or sale of securities. *Id.* 560 F.2d at 249.

**6.** In the May 24, 1977 order, this court delayed ruling on this issue pending briefing by the parties. 431 F.Supp. at 298.

**7.** The plaintiffs in the *Kenco* case, 73 C 1755, have taken a voluntary dismissal of their state law claims pursuant to Fed.R.Civ.P. 41(a)(2) and accordingly are not involved in this present motion.

*Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As delineated by the Supreme Court in *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973),

> *Gibbs* involved a suit brought under both federal and state law by a contractor to recover damages allegedly suffered as a result of a secondary boycott imposed upon it by a union. There existed independent federal jurisdiction as to the federal claim, but there was no independent basis of jurisdiction to support the state law claim. Nevertheless, the Court concluded that federal courts could exercise pendent jurisdiction over the state law claim.

*Id.* at 711, 93 S.Ct. at 1796. The Supreme Court held that federal courts had the *power* to hear state law claims which arose from a "common nucleus of operative fact[s]" with a substantial federal law claim. 383 U.S. at 725. Thus, the Court expanded and delineated the scope of an Article III constitutional "case" to encompass all matters, both federal and state, which a litigant would expect "to try . . in one judicial proceeding." *Id.*

In the cases at bar, plaintiffs contend that their state law claims all arise from the same common nucleus of operative facts out of which their federal claims arise. Although defendant does not dispute this contention, defendant argues that: (1) this court still lacks the *power* to hear plaintiffs' state law claims; and (2) if this court has power to hear the plaintiffs's state law claims it should exercise the *discretion* afforded by *Gibbs* to federal courts to decline to hear state law claims which lack an independent basis of federal jurisdiction.

### 1. Power to hear the state law claims

▉ In support of its contention that this court lacks power to hear the plaintiffs' state law claims, Continental makes two arguments. First, defendant argues that in order for a court to consider state law claims, those claims must be pendent to "substantial" federal law claims. Defendant suggests that individuals with state law claims should not be allowed to foist those claims upon federal courts by the mere talismanic raising of federal laws. While this court agrees that defendant has accurately stated the abstract principle of law involved herein,[8] in the cases at bar plaintiffs' state law claims were pendent to "substantial" federal claims.

As stated in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974):

> " 'Constitutional insubstantiality' . . has been equated with such concepts as 'essentially fictitious,' . . . 'wholly insubstantial' . . . 'obviously frivolous' . . . 'and obviously without merit' . . . . The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial . . . . A claim is insubstantial only if " 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' "

*Id.* at 537–38, 94 S.Ct. at 1379, quoting *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973) (citations omitted). *See generally* C. Wright & A. Miller, *supra* § 3564, at 426–30.

That plaintiffs' claims under section 10(b) were not "wholly insubstantial," "obviously

---

8. As the Court stated:

The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, *assuming substantiality* of the federal issues, there is *power* in federal courts to hear the whole.
383 U.S. at 725, 86 S.Ct. at 1138 (emphasis supplied).

frivolous" or "obviously without merit" is best demonstrated by the fact that Judge McGarr, after a thorough review of the then-existing law, upheld plaintiffs' securities laws claims. Moreover, although this court remains convinced that *Santa Fe Indus., Inc. v. Green, supra,* invalidates plaintiffs' section 10(b) and rule 10b–5 claims, those claims alleging defendant's omissions or misstatements concerning purchases or sales of securities for plaintiffs' trusts are not so lacking in merit that they were included in plaintiffs' complaints only to confer jurisdiction in this court over plaintiffs' state law claims.

■ Second, defendant takes the position that even if a federal district court had jurisdiction over pendent state law claims at the time the action was commenced, if the federal claims upon which pendent jurisdiction is based are dismissed prior to trial, the district court *must* dismiss the state law claims which lack an independent basis of federal court jurisdiction. This contention is premised on a statement in *Gibbs* which provides:

> Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims *should be* dismissed as well.

383 U.S. at 726, 86 S.Ct. at 1139 (emphasis supplied). Thus, defendant would have this court read the words "should be" as mandatory language, and would have this court hold that once the federal law claims have been dismissed a district court lacks the *power* to determine the state law claims which were pendent to the dismissed federal claims.

This court cannot accept defendant's argument based on the aforementioned quote from *Gibbs.* Rather, this court views the words "should be" as normative and as an example of how in common situations a court should exercise its discretion in refusing to hear state law claims over which federal courts have pendent jurisdiction power. This conclusion is supported by a number of considerations. First, the structure of the *Gibbs* decision indicates that it is not mandatory that a district court dismiss state law claims once the federal claims are dismissed before trial. Thus, the aforementioned quoted language relied on by defendant appears in that portion of the Supreme Court decision where the Court discussed how a district court should exercise its *discretion* in hearing state law claims. 383 U.S. at 726, 86 S.Ct. 1130. This quotation is preceded by the Court's discussion of the "power" of a federal court to hear pendent state claims. As stated by the Supreme Court itself,

> The Court, in the second aspect of the *Gibbs* formulation, went on to enumerate the various factors bearing on a district court's discretionary decision whether the power should be exercised in a given parallel-claims case . . . . .

*Aldinger v. Howard,* 427 U.S. 1, 9, 96 S.Ct. 2413, 2418, 49 L.Ed.2d 276 (1976) (citing the page of *Gibbs* in which the aforementioned quotation is located, 383 U.S. at 726, 86 S.Ct. 1130).

Second, after the quoted language relied on by Continental the Supreme Court cited in a footnote, 383 U.S. at 726, n.16, 86 S.Ct. 1130, the case of *Wham-O-Mfg. Co. v. Paradise Mfg. Co.,* 327 F.2d 748, 752–54 (9th Cir. 1964), to support its position that dismissal of the state law claims "should" follow dismissal before trial of the federal claims. While it is true that in *Wham-O-Mfg. Co.* the district court dismissed the state claims upon dismissal of the federal claims, the court of appeals, in its affirmance, reviewed such a decision as discretionary. As the court stated:

> [A]lthough we are satisfied the district court did have jurisdiction over the nonfederal subject matter, we believe that on this record the court, *in the exercise of a sound discretion,* had no choice but to dismiss the complaint with respect to that claim.

*Id.* at 753. The Supreme Court's reliance on *Wham-O-Mfg. Co.* indicates that the quotation relied upon by defendant is not to be read as withdrawing the district court's *power* to adjudicate pendent state law claims once the federal claims have been dismissed before trial.

Third, in an analogous situation, the Supreme Court ruled that:

> We are not willing to defeat the common sense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation—by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claims. The Court has shunned this view.

*Rosado v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970).

It should be noted that defendant has cited this court to numerous decisions which seem to suggest that the quoted language from *Gibbs* mandates dismissal in all circumstances of pendent state claims once the federal claims are dismissed before trial. *See, e. g., Tully v. Mott Supermarket, Inc.*, 540 F.2d 187, 195–97 (3d Cir. 1976); *Gibson v. First Federal Savings & Loan Ass'n of Detroit*, 504 F.2d 826, 830–31 (6th Cir. 1974); *Hupp v. Gray*, 500 F.2d 993, 997–98 (7th Cir. 1974); *Ruskay v. Levine*, 425 F.Supp. 1264, 1272 (S.D.N.Y.1977); *Kogan v. National Bank of North America*, 402 F.Supp. 359, 362 (E.D.N.Y.1975); *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F.Supp. 277, 281 (E.D.Wis.1975); *Louisiana ex rel. Purkey v. Ciolino*, 393 F.Supp. 102, 111–12 (E.D.La.1975); *Cohen v. Illinois Institute of Technology*, 384 F.Supp. 202, 203 (N.D.Ill. 1974), *aff'd*, 524 F.2d 818 (7th Cir. 1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976); *Arnson v. General Motors Corp.*, 377 F.Supp. 209, 214 (N.D.Ohio 1974); *Ace Van Lines & Movers, Inc. v. Republic Van & Storage Co.*, 369 F.Supp. 61, 63 (E.D.Wis.1973); *Cohen v. Colvin*, 266 F.Supp. 677, 685–86 (S.D.N.Y.1967). Thus, defendant contends that " 'it smacks of the tail wagging the dog to continue with a federal hearing of the state claim' " under the doctrine of pendent jurisdiction once the federal claims have been dismissed. *McFadden Express, Inc. v. Adley Corp.*, 346 F.2d 424, 427 (2d Cir. 1965). *See also Asher*

*v. Harrington*, 461 F.2d 890, 895 (7th Cir. 1972); *H. S. Equities, Inc. v. Fleet*, 420 F.Supp. 947 (S.D.N.Y.1976); *Glazer v. National Commodity Res. & Stat. Serv., Inc.*, 388 F.Supp. 1341 (N.D.Ill.1974), *aff'd*, 547 F.2d 392 (7th Cir. 1977).

This court has reviewed these aforementioned decisions and has concluded that they do not support defendant's contention. Thus, none of the cases cited attempt any extensive analysis of the question presently before the court but merely cite *Gibbs* in a conclusory manner for the proposition that once the federal claim is dismissed the pendent state claims "must" fall.[9] Moreover, in none of the cases cited are there any factors which would have raised the question of whether the court could have properly exercised its discretion to retain jurisdiction over the state law claims once the federal claim had been dismissed. And finally, there are numerous cases which support the proposition that district courts have the *power* to hear pendent state claims even if the federal claims are dismissed prior to trial. *Abernathy v. Schenley Indus., Inc.*, 556 F.2d 242, 244 (4th Cir. 1977); *Ondis v. Barrows*, 538 F.2d 904, 908 (1st Cir. 1976); *Toensing v. Brown*, 528 F.2d 69, 72 (9th Cir. 1975); *Kuhn v. National Ass'n of Letter Carriers, Branch 5*, 528 F.2d 767, 771 (8th Cir. 1976); *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir.), *cert. denied*, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975); *Whitfield v. Illinois Bd. of Law Examiners*, 504 F.2d 474, 479 (7th Cir. 1974); *Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176, 1180 (2d Cir. 1974); *Yanity v. Benware*, 376 F.2d 197, 201 (2d Cir. 1967); *Meyerhofer v. Empire Fire & Marine Ins. Co.*, 74 F.R.D. 151 (S.D.N.Y.1977); *McLaughlin v. Campbell*, 410 F.Supp. 1321, 1325–26 (D.Mass.1976). *See also* 3A J. Moore, supra ¶ 18.07[1.–4], at 1952. Accordingly, this court holds that even though plaintiffs' federal claims have been dismissed prior to trial, the court still has

---

9. In Tully v. Mott Supermarkets, Inc., 540 F.2d 187 (3d Cir. 1976), a case relied on heavily by defendant, the court declined to maintain jurisdiction over the state law claims after the dis-

missal of the federal claims, but noted that district courts have some discretion in this area. *Id.* at 196.

pendent jurisdiction *power* over plaintiffs' state law claims.

### 2. Discretion to hear the pendent state law claims

■ Although this court has power to hear plaintiffs' state law claims, as the Court in *Gibbs* stated:

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them.

383 U.S. at 726, 86 S.Ct. at 1139. Defendant argues that this court should exercise its discretion and refuse to hear plaintiffs' state law claims. It is contended that once the federal claims have been dismissed early in the litigation there is a presumption that the state claims should be litigated in state court. *Fields v. Fidelity Gen. Ins. Co.,* 454 F.2d 682, 686 (7th Cir. 1971).

After reviewing those factors mentioned in *Gibbs* which are to guide this court's discretion in deciding to retain jurisdiction over the plaintiffs' state law claims, this court has concluded that plaintiffs' pendent state law claims should be dismissed. First, judicial economy will not be injured by dismissal. Although these cases have been pending for some time, little by way of discovery has been accomplished [10] and the cases are still at preliminary stages. Second, the instant pendent state claims involve important and novel issues of state law regarding proper banking procedure, and, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726, 86 S.Ct. at 1139. Moreover, the parties will not be inconvenienced in any way by having these state claims litigated in state court.

However, one factor gives this court pause: fairness to the litigants. The plaintiffs suggest that if this court were to dismiss the pendent state law claims, those claims may be barred by the statute of limitations.[11] Many courts have recognized that if the plaintiffs will be barred by the statute of limitations applicable to the state law claims from instituting actions in state court based on those claims that courts should exercise their discretion and retain pendent state claims. *See, e. g., Meyerhoff v. Empire Fire & Marine Inc. Co.,* 74 F.R.D. 151, 154 (S.D.N.Y.1977); *Haber v. County of Nassau,* 411 F.Supp. 93, 99 (E.D.N.Y. 1976); *McLaughlin v. Campbell,* 410 F.Supp. 1321, 1326 (D.Mass.1976); *Knuth v. Erie-Crawford Dairy Cooperative Ass'n,* 326 F.Supp. 48, 57 (W.D.Pa.1971), *modified,* 463 F.2d 470 (3d Cir. 1972), *cert. denied,* 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1973). *Cf. Ondis v. Barrows,* 538 F.2d 904, 908 (1st Cir. 1976). Plaintiffs argue that it would be unfair to dismiss their state claims since those claims have been diligently prosecuted and should not be lost because of the usual, delayed course of litigation.

While this court does not agree with defendant that any statute of limitations problem facing plaintiffs is of their own making in bringing this suit in the "wrong

---

**10.** Moreover, any discovery already accomplished can be used in the state court proceeding.

**11.** Thus, plaintiffs point out that in 1976, while the defendant's motion to reconsider the May 10, 1974 order was under advisement, Illinois amended its statute of limitation section dealing with the reinstitution of an action once a previously filed action is dismissed. Ill.Rev. Stat. ch. 83, § 24a, *amended* October 1, 1976.

Plaintiffs suggest that only if a *voluntary* dismissal of the previously filed action is taken will section 24a *now* allow an additional one year from the time of dismissal to refiling and that a one-year grace period is not allowed if a *nonvoluntary* dismissal occurs. While plaintiffs contend that the 1976 amendment to section 24a was not intended to have this affect, they argue that on its face the statute creates an uncertainty.

forum," [12] this court agrees that the speculative nature of the statute of limitation problem does not outweigh the need to have the state law claims raised by plaintiffs litigated in state court. This court wishes to make clear, however, that it believes plaintiffs should be given the opportunity to litigate the serious claims which they have raised and this court is convinced that the Illinois court should afford plaintiffs a forum. Plaintiffs have been more than diligent in pressing their claims. But, because all the other relevant factors point to dismissal of plaintiffs' state law claims this court is further concerned that after a long and costly federal trial it could be held that it was improper for this court to retain jurisdiction over those claims. Thus, dismissal at this time will allow immediate review of this court's ruling by the court of appeals [13] and will, at the same time, allow plaintiffs the opportunity to determine if the Illinois courts will hear their claims.

Accordingly, the cases 72 C 2551, 73 C 46 and 74 C 2899 (except for plaintiff Credit Union Nat'l Ass'n) are hereby dismissed since this court lacks independent subject matter jurisdiction over the state law claims raised therein. Moreover, the plaintiffs in 73 C 660, 73 C 772, and plaintiff Credit Union Nat'l Ass'n in 74 C 3899 may not rely on the doctrine of pendent jurisdiction to support their state law claims.

### B. Diversity Jurisdiction

#### 1. *O'Donnell*, 73 C 772

The plaintiffs in the *O'Donnell* case argue that even if this court declines to take jurisdiction over their state law claims pursuant to the doctrine of pendent jurisdiction, this court has jurisdiction pursuant to 28 U.S.C. § 1332 over those claims. Continental, in response, argues that although diversity of citizenship exists between the parties, there is a lack of the proper jurisdictional amount in controversy, $10,000.00, alleged on the face of the complaint. While plaintiffs appear to admit that as individuals their claims do not exceed $10,000.00, they argue that this is a proper case for "aggregation" of individual claims for purposes of the $10,000.00 jurisdictional amount requirement.

■ This court must agree with plaintiffs that aggregation is appropriate in this case and that since plaintiffs' alleged class has been allegedly injured in excess of $10,-000.00 this court has jurisdiction over the *O'Donnell* case pursuant to 28 U.S.C. § 1332. As the Supreme Court in *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) recognized, "aggregation" of claims is permitted:

> in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.

*Id.* at 335, 89 S.Ct. at 1056. The Court thus held that Fed.R.Civ.P. 23, the class action rule, did not expand the scope of the jurisdictional amount "aggregation" rule and the mere fact that a class action device was employed did not call into play the aggregation rule. The traditional rules on "aggregation" therefore remain in full effect and the cases prior to *Snyder* delineating that rule are still valid precedent. *See generally* 3B J. Moore, Federal Practice ¶ 23.95 (1977).

In the case at bar, plaintiffs are all employees of United Air Lines and are all members of a pension plan established between United and the plaintiff Air Line Pilots Assoc. for the benefit of United's employees. Defendant Continental is the trustee of the assets of the pension plan and are solely in control of investment decisions but pursuant to agreement have no control

---

12. If the court was to accept this argument it would place a chilling effect on litigants who wish to present substantial federal claims but who will be afraid to do so if they might lose their state claims once their federal claims are dismissed. Such a ruling would only needlessly restrict the proper growth of the federal law, particularly in the securities and antitrust area.

13. The prior May 24, 1977 ruling of this court dismissing the federal securities laws claims of plaintiffs has been appealed to the Seventh Circuit Court of Appeals. Dismissal now of the state law counts will allow the Court of Appeals to review all the cases in their entirety at one time.

or role in the operation of the pension plan and the distribution of benefits thereunder.

Defendant argues that because each member of the pension plan gets individual benefits under the plan each plaintiff's claim is separate and distinct and cannot be aggregated for purposes of the $10,000.00 jurisdictional amount requirement. Thus, defendant points out that under the pension plan each individual member has varying amounts due and owing and are entitled to different level of benefits depending on when he joined the plan and the length of time an individual was a member of the plan.

■■■ However, defendant's focus on the plaintiffs' rights under the pension plan misconceives the nature of plaintiffs' lawsuit and claim. Thus, unlike the cases cited by defendant, *Hughes v. Encyclopaedia Britannica*, 199 F.2d 295 (7th Cir. 1952); *Sturgeon v. Great Lakes Steel Corp.*, 143 F.2d 819 (6th Cir.), *cert. denied*, 323 U.S. 799, 65 S.Ct. 190, 89 L.Ed. 622 (1944); *Andrews v. Equitable Life Assur. Soc.*, 124 F.2d 788 (7th Cir.), *cert. denied*, 316 U.S. 682, 62 S.Ct. 1270, 86 L.Ed. 1755 (1942); *Houck v. Travelers Ins. So.*, 356 F.Supp. 729 (E.D.Pa. 1973); and *Cashman v. Port of New York Auth.*, 319 F.Supp. 1264 (S.D.N.Y.1970), where the plaintiffs were suing the pension plan itself, or an individual who was in direct privity of contract with the plaintiffs, in the case at bar, plaintiffs are suing the defendant Continental *qua* trustee and not the pension plan. Plaintiffs are not seeking to enforce their individual rights under the pension plan and to receive their individual benefits under that plan from defendant. Rather, plaintiffs *jointly* seek to "reconstitute" the trust and have defend-

ant pay the lump sum to the pension plan which plaintiffs allege is due and owing because of Continental's illegal activities.[14] Thus, this case is similar to the cases of *Handley v. Stutz*, 137 U.S. 366, 11 S.Ct. 117, 34 L.Ed. 706 (1890); *New Jersey Welfare Rights Organization v. Cahill*, 483 F.2d 723 (3d Cir. 1973); *Berman v. Narragansett Racing Assoc.*, 414 F.2d 311 (1st Cir. 1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970); *Boesenberg v. Chicago Title & Trust Co.*, 128 F.2d 245 (7th Cir. 1942); and *Bass v. Rockefeller*, 331 F.Supp. 945 (S.D.N.Y.1971), *vacated on other grounds*, 464 F.2d 1300 (2d Cir. 1971), in which the various courts recognized that suits to reconstitute a trust are in fact "joint" and "true" class actions which are appropriate for "aggregation." [15]

Accordingly, this court finds that plaintiffs in the *O'Donnell* case may aggregate their claims on the face of their complaint and this court must accept jurisdiction of this cause pursuant to 28 U.S.C. § 1332.

2. Counts VI and VIII of Lipson, 73 C 660 plaintiff Credit Union Nat'l Assoc. in Brabec, 74 C 2899, and O'Donnell, 73 C 772 (counts IX through XIII)

■■ Finally, defendants argue that even if in the aforementioned cases there exists independent subject matter jurisdiction over plaintiffs state law claims those claims raising "conflict of interests" should be dismissed as those claims fall within the "exclusive primary jurisdiction" of the Comptroller of Currency. However, Judge McGarr, in his May 10, 1974 opinion expressly rejected this argument, [1973–74 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,-

**14.** Since each plaintiff is to be afforded ultimate recovery not from defendant but from the pension plan, each plaintiff must know how much money is allegedly owed to the pension plan's trust fund by defendant before any individual recovery can be had. Accordingly, each plaintiff would have a right to have the trust reconstituted and each plaintiff's individual action would have the effect of determining the individual sums due and owing from the pension plan to each of the other members of the plan. All the members of the pension plan,

therefore, are necessary parties to any suit to reconstitute the pension plan's trust fund. Fed. R.Civ.P. 19(a).

**15.** Although this court believes the decision in *Atwood v. National Bank of Lima*, 115 F.2d 861 (6th Cir. 1940) is distinguishable from the case at bar because of the court's finding that the class action could not be maintained, to the extent that it is in conflict with the cases cited in the body of the opinion this court rejects its analysis as incorrect.

565, at 95,962, and this court has not been presented any new authority to cast doubt on that opinion. Accordingly, this present contention by defendant is rejected.

### C. Conclusion

Therefore, cases 72 C 2551 and 73 C 46 are hereby dismissed, this court having declined to take pendent jurisdiction over the state claims raised therein. Defendant's motion to dismiss in 74 C 2899 is granted except as to Credit Union National Assoc. which remains a plaintiff in that action. Defendant's motion in 73 C 660 and 73 C 772 is denied, this court having diversity jurisdiction over the claims raised therein.