**SUNSHINE KITCHENS, a Florida Corporation, Plaintiff,**

v.

**ALANTHUS CORPORATION, a Delaware Corporation et al., Defendants.**

**No. 74–1361–Civ–JLK.**

United States District Court, S. D. Florida, Miami Division.

Nov. 7, 1975.

See also D.C., 66 F.R.D. 15.

Pettigrew & Bailey, Miami, Fla., for plaintiff.

Bradford, Williams, McKay Kimbrell, Hamann & Jennings, P. A., Miami, Fla., for defendants.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

This cause came on for consideration upon motions by both parties for summary judgment as to Counts I, II, III, IV, and V of the complaint, all of which .charge the defendant with violations of the Security Act of 1933, the Securities Exchange Act of 1934 and Chapter 517, Florida Statutes. The court, having considered the record and being fully advised in the premises, finds and concludes that the motion of the plaintiff should be denied and the motion of the defendant should be granted.

Sunshine purchased certain computers from Alanthus under an agreement whereby Alanthus would manage leasing arrangements. The complaint alleges that the transaction contemplated favorable federal income tax benefits (Sunshine was seeking a tax shelter) and also expectations of a return on the investment when the computers were sold some years later. The arrangement did not prove satisfactory and Sunshine was not able to take advantage of all expected benefits. This suit followed, with Sunshine charging violations of both state and federal securities laws, as well as a count for breach of contract and one for common law fraud. At issue is whether the transaction constituted a "security" within the meaning of the securities laws relied on by the plaintiff.

The starting point in our consideration is the case of *S.E.C. v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1943). Both parties agree on its still viable test for determining the existence of a security. The necessary elements are three:

1. An investment of money
2. In a common enterprise

3. With profits to come solely from the efforts of others. 328 U.S. 301, 66 S.Ct. 1100.

In determining the meaning and scope of the term "security" under this test, form should be disregarded for substance and the focus should be on economic reality. *Id.* at 298, 66 S.Ct. 1100. *See also, United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

Before turning to an application of the *Howey* test to the facts of the instant case the latest Supreme Court pronouncement on the subject should be reviewed. The case of *United Housing Foundation, Inc. v. Forman, supra,* involved an action by residents of a state subsidized, non-profit housing cooperative apartment against the apartment for damages. The residents asserted that the shares purchased in the cooperative, entitling the purchaser to lease an apartment therein, constituted securities for purposes of the federal securities laws. The court disagreed, finding that the inducement for entering into participation was a housing unit, that the participators were interested in a place to live, and so there was no security transaction involved.

Regardless of their label, the shares of stock were not the type of instrument "that in our commercial world falls within the ordinary concept of a security". *Id.* at 847, 95 S.Ct. at 2058. *See* H.R.Rep. No. 85, 73rd Cong., 1st Sess., 11 (1933).

■ The facts presented by the computer transaction of the instant case may likewise be distinguished from a security transaction because here, also, there is absent "an investment where one parts with his money in the hope of receiving profits from the efforts of others." 421 U.S. at 858, 95 S.Ct. at 2063. This conclusion is based on an application of the *Howey* test. Since it is agreed that there was an investment of money, the court need only concern it-self with the last two elements of (1) a common enterprise and (2) an expectation of profits to be derived from the efforts of others.

Defendant submits that there was no common enterprise because the transaction was a unitary contract involving Sunshine and Alanthus. Plaintiff counters that the common enterprise may exist with only these two parties. Two recent Fifth Circuit cases are relevant.

In *S.E.C. v. Koscot Interplanetary, Inc.,* 497 F.2d 473 (5th Cir. 1974), Glen Turner's investment scheme was found to be in violation of securities laws. The court, in considering the common enterprise element, found that the fact that one investor's return was independent of other investors in the same scheme was not dispositive of the issue. What was important was that the fortunes of all investors were dependent on the efficacy of the defendant's efforts. *Id.* at 470. This reasoning was amplified in *S. E. C. v. Continental Commodities Corp.,* 497 F.2d 516 (5th Cir. 1974). That case held that options on commodities futures contracts were within the *Howey* definition of a security. The common enterprise requirement was met because "the success of the trading enterprise as a whole and customer investments individually is contingent upon the sagacious investment counseling of Continental Commodities." *Id.* at 522–523. Even though the defendant gave individual advice to each customer, all depended on its expertise. Thus all were engaged in a common enterprise.

■ Sunshine looks to these two cases for support in its argument that a common enterprise may exist between one investor and one promoter. It points out that it knew nothing about computers and the success of the venture depended upon Alanthus' management of the leasing arrangements. Therefore, Sunshine submits, a common enterprise existed between it and Alanthus because the two were economically interwoven. We cannot accept this extension of the case law. Both *Koscot*

and *Continental* dealt with schemes involving hundreds of investors. Although the court was not interested in whether the money or profits were pooled, it was interested, however, and found to be a critical factor, "the uniformity of impact of the promoter's efforts." 497 F.2d at 478. By the reasoning of the two decisions, then, the common enterprise can be likened to a wheel, with investors as spokes and the promoter at the hub. The court was unconcerned that one spoke was not connected to any other spoke, but this does not mean that a common enterprise may exist with a hub and only one spoke as Sunshine would have the court find. Under such circumstances there is no common enterprise and the second prong of the *Howey* test is unsatisfied by the facts of the transaction before the court.

Moving to the third requirement, that of profits to come from the efforts of others, we return to the findings of *Forman*. Looking at the economic realities of the situation before the court, Sunshine was not seeking profits as defined by that case. Sunshine's inducement for entering into the computer transaction was the hope of favorable federal income tax benefits, and by its own complaint the company was interested in a tax shelter. The concern, therefore, was that the transaction show a loss, not a profit, and the success or failure of the venture would depend upon Sunshine's own accounting procedures, not the managerial efforts of Alanthus. If Alanthus somehow failed to lease the computers, an even greater loss would be generated to offset Sunshine's other profits. Thus it is not possible to say that Sunshine entered the transaction with the expectation of profits to come from Alanthus' efforts.

▌ Sunshine contends that profits need not be direct monetary benefits, but may be any type of economic return. Since tax benefits are a type of economic return, they may be considered "profits". We cannot agree. The Court of Appeals in *Forman* had found that certain tax benefits could be considered a sufficient "profit within the *Howey* concept." *Forman v. Community Services, Inc.,* 500 F.2d 1246, 1254 (2d Cir. 1974). The Supreme Court reversed, saying that the tax benefits could be realized by any homeowner who payed interest on his mortgage and so could not constitute "profits". The dissent took issue with this position, feeling that the tax benefits could only be realized through the "efforts of others", and that the cooperative's management had to properly organize and operate the project to realize the tax advantage for the residents. Sunshine makes a similar argument to this court, that it relied on Alanthus to realize economic benefits. Sunshine is mistaken. The dissent takes a broader view of what might constitute profits than the majority, and it must be concluded that this view was rejected. Even so, this court has already found that the success of the arrangement was not dependent upon Alanthus' efforts so that Sunshine may not bring itself within even the broader interpretation of the dissent. All that was necessary for the transaction to be a success was for Sunshine to show sufficient income in order to utilize the losses generated by the tax shelter. The real effect of the transaction had nothing to do with Alanthus' expertise; it was controlled solely by Sunshine's income level. If Sunshine failed to have sufficient income to be offset, then the company would realize no benefit from the transaction, regardless of whether Alanthus was able to lease the computers. This is not an expectation of profits to come from the efforts of others as contemplated by the controlling case law and so this element, like that of common enterprise, is deficient. Since the transaction fails to satisfy the *Howey* test, it is not governed by the various securities laws. Accordingly the defendant is entitled to summary judgment on counts I, II, III, IV, and V and is therefore

Ordered and adjudged that the motion of the plaintiff for partial summary

judgment be and the same is hereby denied. It is further

Ordered and adjudged that the motion of the defendant for summary judgment as to counts I, II, III, IV and V of the complaint be and the same is hereby granted.