Noah A. TROYER and Clara
Troyer, Plaintiffs,
v.
Joseph KARCAGI, Prescott, Ball & Turen,
Edward D. Jones & Co., and First Columbus Corporation, Defendants.

78 Civ. 1946 (RWS).

United States District Court,
S. D. New York.

July 11, 1979.

John C. Klotz, New York City, for plaintiffs.

Shea, Gould, Climenko & Casey, New York City, for defendant Edward D. Jones & Co.

Burns, Jackson, Miller, Summit & Jacoby, New York City, for defendants First Columbus Corporation, and Prescott, Ball & Turben.

SWEET, District Judge.

Plaintiffs Noah and Clara Troyer ("the Troyers") seek in an Amended Complaint to recover alleged losses resulting from their investment in certain discretionary securities trading accounts. The defendants are one individual, Joseph Karcagi ("Karcagi"), and three brokerage houses, namely First Columbus Corporation ("First Columbus"), Jones & Co. ("Jones"), and Prescott, Ball & Turban ("Prescott") (collectively the "company defendants"), with which Karcagi was associated.

The Troyers claim that defendants have violated Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j ("the 1934 Act"), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, and Section 12 of the Securities Act of 1933, 15 U.S.C. § 77*l* ("the 1933 Act"). Defendants have moved, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the Troyers' claims.[1] For the reasons stated below, the motions pursuant to Rule 12(b)(6) are denied and the motions pursuant to Rule 9(b), granted in part and denied in part.

The Amended Complaint alleges that the Troyers were unsophisticated in securities transactions, but had substantial assets to invest; that in September of 1972 defendant Karcagi induced them to open cash and margin securities trading accounts with his employer, defendant First Columbus, and to grant Karcagi complete discretion to manage the funds in these accounts ("the discretionary accounts"); and that the Troyers'

---

1. Although Karcagi has not moved to dismiss the Amended Complaint, he did, *pro se,* join in motions by the company defendants to dismiss the original Complaint. *See* letter from Karcagi to the Honorable Henry F. Werker, dated August 4, 1978. This court will, therefore, treat the motions now before it as including a motion to dismiss by Karcagi on the grounds asserted by the company defendants.

Further, although the Amended Complaint is not a model of clarity, for the purposes of the motions pursuant to Fed.R.Civ.P. 12(b)(6) it must be liberally construed and the allegations therein must be taken as admitted. *See, e. g., Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Moreover, the Amended Complaint cannot be dismissed for failure to state a claim upon which relief can be granted unless it appears that the Troyers can "prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Id., quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

initial and subsequent deposits of cash and securities into the discretionary accounts totalled over $100,000 by the end of 1973. It is further alleged that Karcagi represented: (i) that he would invest these funds in the Troyers' best interests, (ii) that the investments had been profitable and (iii) that the portfolio was of great value; and that all of these representations were false because Karcagi intended to manage the discretionary accounts for his own benefit and because the Troyers' portfolio declined, rather than increased, in value. It is further alleged that Karcagi failed to disclose to the Troyers that in his management of the discretionary accounts he engaged in self-dealing by: (i) buying "new issues" of stock for the Troyers' accounts in transactions where his employer, First Columbus, acted as a dealer or market-maker, (ii) using the accounts to make a market in certain securities and (iii) selling certain securities from the accounts when he anticipated that the price of those securities would soon rise; and that as a result of this alleged undisclosed self-dealing, the value of the Troyers' accounts was substantially reduced as of the end of 1973.

It is further alleged that in December, 1973, Karcagi left First Columbus and entered the employ of defendant Jones; that in July of 1976 Karcagi again changed employers, this time becoming employed by defendant Prescott; that each time Karcagi changed jobs he induced the Troyers to close their discretionary accounts with Karcagi's previous employer and to open discretionary accounts with his new employer; and that Karcagi continued to misrepresent that his management of the Troyers' accounts had been profitable. The Amended Complaint finally alleges that in November of 1977 the Troyers closed their accounts with Prescott, and that by that time approximately 75% of their total investment had been lost.

■ The Amended Complaint survives defendants' motions to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., because it contains allegations of a material misrepresentation or omission by Karcagi in connection with the purchase or sale of a security. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Material misrepresentations and omissions by Karcagi are alleged here, namely: (i) the misrepresentation of Karcagi's intent to manage the discretionary accounts in the Troyers' best interests; (ii) the misrepresentation that Karcagi's management of the accounts had been profitable; (iii) the misrepresentation that the Troyers' portfolio was of great value; and (iv) the omissions occurring when Karcagi failed to disclose his self-dealing.[2] These misrepresentations

---

2. The alleged failures to disclose include Karcagi's alleged failure to disclose his or his employer's role as a dealer or a market-maker. It should be noted that such failures to disclose would constitute a material omission. *See Chasins v. Smith, Barney & Co., Inc.,* 438 F.2d 1167 (2d Cir. 1970). Moreover, even if the proof at trial shows that there were formal disclosures to the Troyers via terms such as "dealer" and "market-maker", a material omission could obtain if, as is alleged, the Troyers were not sophisticated enough to understand those terms. *See Chasins, supra; Cant v. A. G. Becker & Co., Inc.,* 374 F.Supp. 36 (N.D.Ill. 1974). *See also In re Scientific Control Corp. Securities Litigation,* 71 F.R.D. 491, 508 (S.D.N.Y.1976).

It should be further noted that, although he was their agent, Karcagi's knowledge of the material facts is not imputed to the Troyers. This conclusion can be based upon the reasoning in *Schoenbaum v. Firstbrook,* 405 F.2d 200, 211–12 (2d Cir. 1968), cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969), cited with approval in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 738, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Although *Schoenbaum* involved breaches of duty owed by directors to their corporation, this distinction, for the purposes of this action, does not alter the result. *Cf. Selzer v. Bank of Bermuda, Ltd.,* 385 F.Supp. 415, 419 (S.D.N.Y.1974) (standing of trust beneficiary to sue trustee under Rule 10b–5 for misuse of trust corpus not contested by defendant trustee). *But see O'Brien v. Continental Illinois National Bank and Trust Co.,* 431 F.Supp. 292 (N.D.Ill.1977), *appeal dismissed,* 566 F.2d 1175 (7th Cir. 1977); and *Blackmar v. Lichtenstein,* 438 F.Supp. 803 (E.D.Miss.1977), *rev'd on other grounds* 578 F.2d 1273 (8th Cir. 1978). *See also Sante Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 48 (1977), which held that fiduciary misconduct is not actionable under Rule 10b–5 if it does not involve a misrepresentation or omission to the plaintiffs but, nonetheless, acknowledged cases such as *Schoenbaum, supra,* that held that where there is an

and omissions were in connection with the purchase or sale of a security, because the misrepresentations and omissions allegedly induced the Troyers to invest in the discretionary accounts, which accounts are here determined to be securities.[3]

■ The discretionary accounts were "investment contracts," and therefore, "securities,"[4] because these accounts had the three characteristics necessary to create an investment contract pursuant to the test announced in *SEC v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).[5] Two of the three prongs of the *Howey* test are satisfied because the Troyers allegedly invested money and were led to expect profits solely from the efforts of Karcagi as their investment manager. It is less clear whether the other prong of the *Howey* test—"common enterprise"—is adequately alleged, because it does not appear from the Amended Complaint that any investors other than the Troyers opened discretionary accounts under Karcagi's management.

■ The defendants have interpreted "common enterprise" to require a pooling of the monies of various investors; that is, they see a requirement of "horizontal commonality." The Troyers, on the other hand, assert that a one-to-one relationship between an investor and an investment manager, that is "vertical commonality," is sufficient to create a common enterprise.[6] In this District vertical commonality has been held sufficient to satisfy the *Howey* test when the alleged investment contract is a discretionary account for trading in commodities futures. *See Johnson v. Arthur Espey, Shearson, Hamill & Co.*, 341 F.Supp. 764 (S.D.N.Y.1972); *Berman v. Orimex Trading, Inc.*, 291 F.Supp. 701 (S.D.N.Y. 1968); and *Maheu v. Reynolds & Co.*, 282 F.Supp. 423 (S.D.N.Y.1967). No compelling reason has been advanced for the proposition that discretionary commodities accounts and discretionary securities accounts differ with respect to the interpretation of the *Howey* test, nor is a different result required by the division of authority in other Circuits.[7] The vertical commonali-

"element of deception as part of the fiduciary misconduct" an action lies under Rule 10b–5. *Santa Fe, supra* at 475 n. 15, 97 S.Ct. 1292, 1301 n. 15.

3. That the discretionary accounts were investment contracts is explicitly asserted in the Amended Complaint. This assertion, however, appears only in Count II of the Amended Complaint, which pleads a violation of Section 12 of the Securities Act of 1933, and not in Count I, which pleads the Rule 10b–5 claim. Nonetheless, the Amended Complaint as a whole alleges the facts necessary to support the theory that there is a claim under Rule 10b–5 because it is here determined that the discretionary accounts were themselves securities.

4. The term security includes "any . . . investment contract." § 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1); § 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10).

5. *SEC v. W. J. Howey Co.*, 328 U.S. 293, at 298–99 and 301, 66 S.Ct. 1100, 1104, at 90 L.Ed. 1244 (1946) gave the traditional definition of an investment contract as follows:

[A] contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. . . . The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.

The Court noted, moreover, that this definition: embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits. *Id.* at 299, 66 S.Ct. at 1103.

6. The concepts of "vertical" as opposed to "horizontal" commonality are set forth in *Securities Investor Protection Corp. v. Associated Underwriters*, 423 F.Supp. 168 (D.Utah 1975).

7. The Courts of Appeals of the Seventh and Third Circuits, and District Courts in the Sixth Circuit, have adopted the horizontal approach, interpreting "common enterprise" to mean a relationship among investors whose monies or investment proceeds are pooled in the enterprise. *See Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96 (7th Cir. 1977); *Milnarik v. M–S Commodities, Inc.*, 457 F.2d 274, 276 (7th Cir.), *cert. denied*, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972); *Wasnowic v. Chicago Board of Trade*, 352 F.Supp. 1066, 1069 (M.D. Pa.1972), *aff'd without opinion*, 491 F.2d 752 (3rd Cir.), *cert. denied*, 416 U.S. 994, 94 S.Ct.

ty alleged here is therefore sufficient to satisfy the common enterprise component of the *Howey* test.

 The Amended Complaint also pleads facts sufficient to satisfy the "purchaser-seller" or "in connection with" requirement of an action under Rule 10b–5. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). A purchase can occur whenever an investor takes action that "represent[s] a new decision by [him] to invest." *Fischer v. New York Stock Exchange*, 408 F.Supp. 745, 755 (S.D.N.Y.1976) (plaintiffs' agreement to extend loans they had previously made held to be the purchase of an investment contract). In the case at bar, there are various actions alleged which can be said to represent a new decision to invest in a discretionary account, and hence a purchase of an investment contract, by the Troyers. More specifically, as to the original discretionary accounts with First Columbus, the allegation of an initial deposit of funds to open those accounts constitutes a sufficient allegation of the purchase of an investment contract, as do each of the allegations of subsequent deposits of new funds. In addition, the allegation is sufficiently made that each time the Troyers opened new discretionary accounts with a new brokerage house (i. e., after Karcagi moved to Jones and to Prescott), this

amounted to the purchase of a new investment contract.

 To satisfy the "in connection with" requirement, however, more than a purchase is required. That is, there must be a causal connection between a defendant's misstatements or omissions and the plaintiff's purchase. *See SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860 (2d Cir. 1968). There can be no such causal connection where the misstatement or omission occurred after the purchase. *See duPont v. Wyly*, 61 F.R.D. 615, 625 (D.Del.1973). Hence, where it is alleged that a misrepresentation or omission by Karcagi induced the "mere retention" of the discretionary accounts by the Troyers, no claim under Rule 10b–5 can be asserted in connection with the purchase of the investment contracts governing the funds already in these accounts. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Clinton Hudson & Sons v. Lehigh Valley Cooperative Farms, Inc.*, 73 F.R.D. 420, 425–26 (E.D.Pa.1977), aff'd 586 F.2d 834 (3d Cir. 1978); *Ingenito v. Bermec Corporation*, 376 F.Supp. 1154, 1174 (S.D.N.Y.1974). On the other hand, where it is alleged that a misrepresentation or omission occurred before one of the purchases of a discretionary account, as defined above, and that this fraud induced the purchase, a Rule 10b–5 claim upon which relief

---

2407, 40 L.Ed.2d 773 (1974); *Berman v. Bache, Halsey, Stuart, Shields, Inc.*, 467 F.Supp. 311. [Current Binder] (S.D.Ohio 1979). *See also Stuckey v. duPont Glore Forgan, Inc.*, 59 F.R.D. 129, 131 (N.D.Cal.1973); and *Sunshine Kitchens v. Alanthus Corp.*, 403 F.Supp. 719, 721–22 (S.D.Fla.1975) (contract for the purchase and leasing of a computer held not to be an investment contract).

The horizontal approach of the above-cited cases is to be contrasted with the vertical commonality approach adopted by the Courts of Appeals of the Ninth, Eighth, and Fifth Circuits, and by District Courts in the Fourth and Tenth Circuits. *See, e. g., Hector v. Wiens*, 533 F.2d 429, 433 (9th Cir. 1976) (summary judgment denied where plaintiff alleged that a bank and a feedlot operator had worked together to sell him an investment contract by which he would invest in the feedlot); *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir. 1973); *Los Angeles Trust Deed & Mortgage*

*Exchange v. SEC*, 285 F.2d 162 (9th Cir. 1960); *Miller v. Central Chinchilla Group, Inc.*, 494 F.2d 414 (8th Cir. 1974); *Moody v. Bache & Co.*, 570 F.2d 523 (5th Cir. 1978); *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (5th Cir. 1974); *SEC v. Continental Commodities Corp.*, 497 F.2d 516 (5th Cir. 1974); *Rochkind v. Reynolds Securities, Inc.*, 388 F.Supp. 254 (D.Md.1975); *Securities Investor Protection Corp. v. Associated Underwriters*, 423 F.Supp. 168 (D.Utah 1975). *But see SEC v. Heritage Trust Co.*, 402 F.Supp. 744, 749 (D.Ariz.1975). *See also Marshall v. Lamson Bros. & Co.*, 368 F.Supp. 486 (S.D.Iowa 1974); *Mitzner v. Cardet International, Inc.*, 358 F.Supp. 1262 (N.D. Ill.1973); *Anderson v. Francis I. duPont & Co.*, 291 F.Supp. 705 (D.Minn.1968). These cases either state or imply that a link between any single investor and the promoter is sufficient to satisfy the common enterprise element of the *Howey* test.

can be granted against Karcagi is stated.[8] Defendants' motions pursuant to Rule 12(b)(6) Fed.R.Civ.P. are, therefore, denied as to the Rule 10b–5 claim against Karcagi.

As an alternative to the investment contract claim just discussed, the Troyers assert a Rule 10b–5 cause of action against Karcagi based upon fraud in connection with purchases or sales of the underlying securities traded by Karcagi in the discretionary accounts. The Rule 10b–5 claim for Karcagi's alleged omissions relating to his self-dealing in the transactions listed in Exhibit "B" to the Amended Complaint is sufficiently alleged, but the allegations as to misrepresentations and omissions relating to Karcagi's performance or intentions as the Troyers' investment manager do not adequately state a Rule 10b–5 claim. This distinction obtains because of the nature of the "in connection with" requirement.

The alleged misrepresentations concerning Karcagi's investment performance and his intentions affected the investors' confidence in a person selected by them to be their fiduciary rather than influencing their decision to purchase or sell particular securities. The purpose of Rule 10b–5, i. e., to promote "the maintenance of free and open securities markets nurtured in a climate of fair dealing"is not therefore sufficiently served. *Niederhoffer, Cross & Zeckhauser, Inc. v. Telstat Systems,* 436 F.Supp. 180, 184 (S.D.N.Y.1977), *quoting Herpich v. Wallace,* 430 F.2d 792, 808 (5th Cir. 1970). *See Wilson v. First Houston Investment Corp.,* 566 F.2d 1235 (5th Cir. 1978), holding that no Rule 10b–5 claim exists where an investment manager represents that he will utilize computer analysis to guide investments on his client's behalf, but then never employs such analysis. *See also Sacks v. Reynolds Securities, Inc.,* 434 F.Supp. 37

(D.D.C.1977), holding that the "in connection with" requirement was not satisfied where the defendant brokerage house delayed in complying with instructions to transfer various accounts to another brokerage house. *See generally Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Hence, under the Troyers' alternative theory of fraud in connection with purchases or sales of the underlying securities traded by Karcagi in the discretionary accounts, a Rule 10b–5 cause of action is adequately alleged as to instances of the purchase or sale of securities under circumstances where Karcagi failed to disclose self-interest, but not as to other purchases or sales where Karcagi induced the Troyers to grant him the discretion to make the purchases or sales by generalized representations.

The defendants have also moved for dismissal of the Rule 10b–5 claim under Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "the circumstances constituting fraud" must be "stated with particularity."[9] This means that the Troyers must state the time, place and content of Karcagi's alleged misrepresentations. *See* 2A J. Moore, *Federal Practice* ¶ 9.03 at 1927 (2d ed. 1975); *Todd v. Oppenheimer & Co.,* 78 F.R.D. 415, 419–21 (S.D.N.Y.1978); *Anspach v. Bestline Products, Inc.,* 382 F.Supp. 1083, 1091 (N.D.Cal.1974), *citing Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir. 1973). The nature of Karcagi's alleged omissions must also be particularly stated.

The pleading of Karcagi's alleged failure to disclose his self-interest in the transactions listed in Exhibit "B" to the Amended Complaint is sufficiently particular in that the transactions and the nature of Karcagi's self-interest in them are identified. As to the alleged misrepresentations

---

**8.** This conclusion does not mean that more particularity is not required as to the time the alleged misrepresentations occurred vis-a-vis the time of the purchases. See discussion, *infra.*

**9.** Rule 9(b) of the Federal Rules of Civil Procedure requires that: "In all averments of fraud or mistake, the circumstances constituting

fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b) is applicable to actions under Rule 10b–5. *See e. g., Segal v. Gordon,* 467 F.2d 602 (2d Cir. 1972); *Lewis v. Varnes,* 368 F.Supp. 45, 47 (S.D.N.Y.1974), *affd.* 505 F.2d 785 (2d Cir. 1974).

of the profitability of Karcagi's management of the discretionary accounts and his intentions to invest in the Troyers' best interests, the misrepresentations are identified as to who made them (i. e. Karcagi), and why they were false. However, the Amended Complaint does not state when or where Karcagi made these alleged misrepresentations. The failure to specify the time at which the alleged misrepresentations were made flaws the Amended Complaint, for two reasons. First, as set forth above, misrepresentations occurring before a purchase or sale of securities can be in connection with that transaction, while a misrepresentation occurring after the transaction cannot be. Second, as set forth below, the secondary liability of the company defendants may depend on which one of them employed Karcagi at the time a misrepresentation was made by him.

In sum, as a result of the lack of particularity as to time and place, the claims based on misrepresentations, as presently pleaded, fail to give the defendants "fair notice of what [the Troyers'] claim is and the grounds upon which it rests." *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir. 1978). The Rule 10b–5 claims against Karcagi which are based on misrepresentations are, therefore, dismissed for failure to comply with Fed.R.Civ.P. 9(b). Those claims based on the failure to disclose self-dealing, however, survive this dismissal.

The Court will entertain a motion for leave to amend as to the time and place of the alleged misrepresentations if such mo-tion is made within 20 days of the date of this opinion.[10]

The Amended Complaint asserts Rule 10b–5 claims against the company defendants as (1) controlling persons of Karcagi, (2) aiders and abettors of Karcagi, or (3) primary violators of Rule 10b–5.

■ Pursuant to Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), a "controlling person" is vicariously liable for violations of that Act committed by the controlled person.[11] As Karcagi's employer, each of the company defendants can be considered a "controlling person" as to Karcagi pursuant to § 20(a). *See, e. g., SEC v. First Securities Company of Chicago*, 463 F.2d 981 (7th Cir. 1970), *cert. denied sub nom. McKy v. Hochfelder*, 409 U.S. 880, 93 S.Ct. 85, 34 L.Ed.2d 134 (1972), where the court held that: "Although the statute does not define what constitutes 'control' for the purposes of the foregoing, we have no doubt that Nay, being the employee of First Securities as its president, was 'controlled' by First Securities within the intendment of section 20(a)." *Id.* at 987 (citation omitted). Therefore, to the extent that claims for primary liability are adequately pleaded against Karcagi, as already discussed, each company defendant may be vicariously liable under Section 20(a) for Karcagi's alleged violations which occurred at the time Karcagi was employed by that company defendant.

■ Whereas vicarious liability pursuant to Section 20(a) can be based on lack of "good faith,"[12] aiding and abetting liability

---

**10.** Leave to amend is not granted as to any aspect of the Amended Complaint other than with respect to the time and place of the presently-alleged misrepresentations.

**11.** Although the Amended Complaint does not explicitly assert a theory of vicarious liability for the Section 10 claim, the Troyers raise this theory in their Memorandum in Opposition. The Second Circuit has yet to clarify whether vicarious liability for a Rule 10b–5 violation is to be based on § 20(a) of the 1934 Act (15 U.S.C. § 78t(a), or on the common law doctrine of *respondeat superior*. *Rolf v. Blyth, Eastman, Dillon & Co., Inc.*, 570 F.2d 38, 48 (2d Cir. 1978). In large part because plaintiffs mention § 20(a), but not *respondeat superior* in their

memorandum in opposition, the court will not consider liability grounded on the common law theory.

**12.** More precisely, pursuant to § 20(a), a controlling person has an affirmative defense if that controlling person "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). Where, as here, the alleged Rule 10b–5 violation is by a registered representative of a brokerage house, that brokerage house satisfies the good faith defense if it takes "some precautionary measures" and "maintain[s] and diligently enforce[s] a proper system of internal supervision and control." *SEC v. First Securities Company of Chicago,*

requires scienter. *Compare Rolf v. Blyth, Eastman, Dillon & Co., Inc.*, 570 F.2d 38 (2d Cir. 1978) (aiding and abetting) *with SEC v. Management Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975) *and SEC v. Geon Industries, Inc.*, 531 F.2d 39 (2d Cir. 1976) (vicarious liability). Thus, the addition of an aiding and abetting claim to a claim based on Section 20(a) will rarely, if ever, benefit a plaintiff. Indeed, in *Geon, supra,* the Second Circuit Court of Appeals refused to consider a claim based on aiding and abetting raised against the employer of the alleged primary wrongdoer. The court reasoned that "we find no need to pass upon the validity of the SEC's theory, since in this context we fail to see what it would add to the claimed violation of a duty reasonably supervise [pursuant to § 20(a) of the 1934 Act]." *Geon, supra* at 51 n. 14.[13] Notwithstanding, because of the uncertainties of the ultimate proof of Karcagi's relationship with the company defendants, at this pretrial stage it is appropriate to deal with the motions aimed at dismissal of the aiding and abetting claims.

■ To defeat a motion to dismiss an aiding and abetting claim it must be alleged that: (i) an independent wrong existed; (ii) the aider and abettor rendered substantial assistance to the primary wrongdoer; and (iii) the aider and abettor had the requisite scienter. *See Rolf v. Blyth, Eastman, Dillon & Co., Inc.*, 570 F.2d 38, 47–48 (2d Cir. 1978). That Karcagi violated Rule 10b–5— the independent wrong—is alleged as discussed *supra.* "Substantial assistance" is sufficiently pleaded because the company defendants allegedly provided Karcagi with facilities to contact the Troyers and to execute trades for their discretionary accounts. *See Rosen v. Dick*, CCH Fed.Sec.L.Rep. ¶ 94,786 (S.D.N.Y. Sept. 3, 1974); *Kerbs v.*

*Fall River Industries, Inc.*, 502 F.2d 731, 739–40 (10th Cir. 1974). *Cf. Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135, 144 (7th Cir. 1969), *cert. denied*, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969).

With respect to scienter, the Amended Complaint alleges that each of the company defendants "knew, or in the exercise of due care . . . ought to have known of Karcagi's misconduct." In another paragraph it is alleged, in addition, that Jones and Prescott failed to make "a reasonable investigation into [the Troyers'] account" and that through such an investigation each of these two company defendants would have discovered that (a) the discretionary accounts were invested in ways unsuitable to the Troyers and (b) that the portfolio had sustained large losses. These discoveries allegedly would have "revealed" to Jones and Prescott that Karcagi was engaging in fraudulent conduct.

■ Actual knowledge of wrongdoing, of course, would constitute scienter. *See, e. g., Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1088 (S.D.N.Y. 1977). In addition, where a fiduciary such as a brokerage house is sought to be held liable as an aider and abettor, scienter has been defined by the Second Circuit Court of Appeals to include recklessness. *Rolf, supra. See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The issue therefore is presented as to what constitutes recklessness in the circumstances alleged here.

■ In *Rolf, supra,* the defendant was held liable for conduct which was "highly unreasonable" and which represented "an extreme departure from the standards of ordinary care . . . to the extent that

---

· 463 F.2d 981, 987 (7th Cir. 1970), *quoting Lorenz v. Watson*, 258 F.Supp. 724, 732 (E.D.Pa. 1966) and *Hecht v. Harris Uphan & Son*, 283 F.Supp. 417, 438 (N.D.Cal.1968), *modified on other grounds*, 430 F.2d 1202 (9th Cir. 1970). That is, the "good faith" defense is made out by a showing of "reasonable supervision" of the employee. *See SEC v. Geon Industries, Inc.*, 531 F.2d 39, 50 (2d Cir. 1976).

**13.** Indeed, the Troyers' aiding and abetting claim appears even more superfluous than the one in *Geon, supra.* In *Geon*, which involved an injunctive action brought by the SEC, sanctions for both vicarious liability and aiding and abetting could have been imposed based on a negligence standard, rather than one of scienter. *See Geon, supra; SEC v. Spectrum, Ltd.*, 489 F.2d 535 (2d Cir. 1973).

the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Rolf v. Blyth, Eastman, Dillon & Co., Inc., supra* at 47, *quoting Sanders v. John Nuveen & Co.*, 554 F.2d 790, 793 (7th Cir. 1977). In footnote 16 to its opinion, however, the Second Circuit refused to adopt the above-quoted definition exclusively, leaving open the possibility of a "less strict test" for recklessness. *Rolf, supra*, 570 F.2d at 47 n. 16. Nonetheless, if recklessness means something more culpable than negligence, as it must, then an allegation that a defendant merely "ought to have known" is not sufficient to allege recklessness. *But cf. Stern v. American Bankshares Corp.*, 429 F.Supp. 818 (E.D. Wis.1977) (sustaining a complaint that alleged that the defendants "knew or should have known of the facts and circumstances concerning the fraud"); *Rolf, supra* at 47 n. 16. Therefore, as to First Columbus no recklessness is alleged.

■ On the other hand, due to the allegations of a failure to investigate by Jones and Prescott, the court cannot, on the present record, find that recklessness has been inadequately pleaded against them. *See SEC v. Spectrum, Ltd.*, 489 F.2d 535, 542 (2d Cir. 1973) (rejecting the argument that a requirement of investigation would impose too great a burden on business activities). *See generally Rolf, supra. Cf. SEC v. Coven*, 581 F.2d 1020, 1029 (2d Cir. 1978) (stating in dictum that a defendant can be found liable if, after being put on notice that a certain fact is questionable, and without having any basis for believing the fact to be true, the defendant affirmatively represented to plaintiffs that the fact was true.)

In sum, as to all three of the company defendants scienter is allegedly based on actual knowledge of Karcagi's misconduct, and as to Jones and Prescott scienter is also alleged based on recklessness by failing reasonably to investigate the Troyers' account.

Hence, to the extent that claims for primary liability are adequately pleaded against Karcagi, the claims against the company defendants for aiding and abetting are sufficiently pleaded to withstand defendants' motions under both Fed.R. Civ.P. 12(b)(6) and 9(b).

The Amended Complaint asserts that Jones and Prescott are primarily liable under Rule 10b–5 for opening margin accounts which were unsuitable for the Troyers and that First Columbus is primarily liable, under Rule 10b–5, for maintaining a margin account unsuitable for them.

■ The opening or maintenance of an unsuitable margin account, without disclosure of the unsuitability to the client, renders a brokerage house primarily liable if that brokerage house acts with scienter and knowingly or recklessly fails to disclose that unsuitability. *See Clark v. John Lamula Investors, Inc.*, 583 F.2d 594 (2d Cir. 1978). *See also* cases cited in *Parson v. Hornblower and Weeks-Hemphill, Noyes*, 447 F.Supp. 482, 494 (M.D.N.C.1977), aff'd. 571 F.2d 203 (5th Cir. 1978). If the Amended Complaint is construed most favorably to the Troyers, such knowledge or recklessness is sufficiently alleged as set forth above. Therefore, a valid claim for primary liability under Rule 10b–5 is alleged against all three of the company defendants for opening or maintaining unsuitable margin accounts. The Amended Complaint may, in addition, be construed to allege a direct failure by First Columbus and Jones, as entities, to disclose that they acted as dealers or market-makers in certain transactions.[14] This allegation states a claim upon which relief can be granted. *See, e. g., Chasins v. Smith, Barney & Co., Inc.*, 438 F.2d 1167 (2d Cir. 1970). As to Prescott, however, no self-interest as a dealer or market-maker in transactions for the Troyers' accounts is alleged; hence, no failure to disclose such self-interest can be construed to be alleged against Prescott.

---

**14.** The Amended Complaint mistakenly alleges that First Columbus and Jones were market-markers in Amrac stock. Because Amrac was listed on the American Stock Exchange, neither First Columbus nor Jones could technically be a "market-maker" in Amrac stock. See the definition of market-maker in SEC Rule 17a–9(1), 17 C.F.R. § 240.17a–9. Nonetheless, First Columbus and Jones could be dealers in Amrac stock.

■ Lastly, the Troyers assert that Prescott is primarily liable to them for a misrepresentation it allegedly made in the form of a computer printout listing previous activity in the Troyers' accounts. Primary liability is asserted because the alleged misrepresentation, that certain trades had been profitable, was a statement made directly by Prescott as an entity, rather than through Karcagi. This claim is inadequate, however, for failure to satisfy the "in connection with" requirement. Because the alleged misrepresentation occurred after the purchase of the last investment contract, the misrepresentation could not be in connection with the purchases of the discretionary accounts. Similarly, because the misrepresentation was allegedly made after the purchases and sales listed on the computer printout, the alleged misrepresentation could not be in connection with these purchases and sales. Hence, no cause of action under Rule 10b–5 against Prescott arises from the alleged misrepresentations.

■ The claims asserted against all of the defendants for conspiracy and concealed misconduct must be dismissed for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure. A claim of conspiracy to defraud must allege, *inter alia*, facts sufficient to support a finding of an agreement among those alleged to be part of the conspiracy. *Cf. Vermillion Foam Products Co. v. General Electric Co.*, 386 F.Supp. 255, 258 (E.D.Mich.1974), *quoting* from *United States v. North Coast Transportation Co.*, 7 F.R.D. 491, 493 (W.D. Wash.1947) (both cases involving anti-trust conspiracies). *See also* Ruder, "Multiple Defendants in Security Law Fraud Cases: Aiding and Abetting, Conspiracy, *In Pari Delicto*, Indemnification and Contribution," 120 *U.Pa.L.Rev.* 597, 630 (April 1972): "Once the independent wrong has been established, aiding and abetting liability will depend upon a showing that the defendant knew of the wrong and gave assistance to the wrongdoer. Conspiracy liability will require knowledge *plus an agreement with the wrongdoer.*" (emphasis added).

The Amended Complaint does not explicitly allege an "agreement" nor can the allegations therein be construed to particularize an agreement among the defendants or any two of them. The word "conspiracy" is mentioned once, albeit in the section of the Amended Complaint headed "Jurisdictional Allegations." The mere use of that word, however, is not sufficient to satisfy Rule 9(b). "[A] bare bones statement of 'conspiracy' . . . without any supporting facts permits dismissal." *Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir. 1972) (involving an allegation of a conspiracy under the anti-trust laws). *See Segal v. Gordon*, 467 F.2d 602, 607–08 (2d Cir. 1972) (quoting the above-quoted language to support the dismissal pursuant to Fed.R.Civ.P. 9(b) of a claim of a conspiracy to violate Rule 10b–5).

■ Paragraph 20 of the Amended Complaint, construed most favorably to the Troyers, alleges that each of the company defendants: (a) knew of Karcagi's misconduct during his employment by it and by the other brokerage houses, (b) benefitted by the misconduct, and (c) concealed the misconduct from the Troyers. These allegations, however, even if proven, do not explain in what manner an agreement to defraud the Troyers existed among the defendants, or between any two of them. The additional facts alleged in the Amended Complaint, i. e., that the Troyers' accounts were moved in sequence from one company defendant to another and that Karcagi was hired sequentially by the company defendants, do not supplement paragraph 20 of the Amended Complaint to the extent necessary to particularly allege a conspiracy. Finally, the addition of the allegation in the opposing papers that there were transactions relating to the Troyers between Jones and First Columbus and between Jones and Prescott, does not yield a sufficiently particular description of an agreement among any of the defendants. *See Segal v. Coburn Corp. of America*, [1973 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,-002 (E.D.N.Y. April 30, 1973) *quoted in Goldberg v. Shapiro*, [1974–75 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,813 (S.D.

N.Y. October 1, 1974). *But cf. Dewitt v. American Stock Transfer Co.*, 433 F.Supp. 994, 1003 (S.D.N.Y.1977).[15] The conspiracy claim is, therefore, dismissed with prejudice.[16]

■ Paragraph 17(m) of the Amended Complaint asserts that the defendants engaged in other acts of misconduct which due to their secretive nature are as yet unknown to plaintiffs. This claim is inadequate under Rule 9(b) Fed.R.Civ.P. because it relies *in toto* on discovery to uncover wrongdoing by defendants. Such total reliance is improper, even where it is alleged that the defendants have concealed their wrongdoing. *See generally Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978); *Goldberg v. Shapiro*, [1974–75 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,813 (S.D.N.Y. October 1, 1974). The rationale for this conclusion is that "the intent of Rule 9(b) is to eliminate the type of fraud action in which all the facts are learned after the complaint is filed through discovery." *Elster v. Alexander*, 75 F.R.D. 458, 461 (N.D.Ga.1977). *See also Salwen Paper Co., Inc. v. Merrill Lynch*, 79 F.R.D. 130, 136 (S.D.N.Y.1978). Therefore, paragraph 17(m) of the Amended Complaint is dismissed with prejudice for failure to comply with Rule 9(b) Fed.R.Civ.P.[17]

Count II of the Amended Complaint[18] asserts a claim against all of the defendants grounded on § 12(2) of the 1933 Act, 15 U.S.C. § 77l.[19] Defendants challenge this claim on three grounds.

■ The first ground for defendants' motions to dismiss is that the Section 12 claim is time barred.[20] Section 13 of the 1933 Act, 15 U.S.C. § 77m, bars suits under Section 12 of that Act commenced more than three years after the securities involved were sold. The securities involved in the Troyers' Section 12 claim are the discretionary accounts which, as discussed above, were "purchased" at various times during the period from September 1972 to July 1976, the date when the Troyers opened accounts with Prescott. Because the original complaint was filed on April 28, 1978, the applicable three year statute of limitations means that only those discretionary accounts "purchased" (as purchase is defined above) after April 28, 1975 can be the basis of a Section 12 claim. Therefore, as to those accounts purchased before April 28, 1975, the Section 12 claim is dismissed.

The other two grounds for defendants' motion to dismiss the Troyers' Section 12 claim have been dealt with above. The discretionary accounts have been held by this court to be securities. The defendants

---

**15.** Rule 9(b) does not work to penalize a plaintiff merely because he was not privy to, and, therefore, cannot plead the details of, the inner workings of a group of defendants who allegedly acted in concert to defraud him. *See Robertson v. National Basketball Association*, 67 F.R.D. 691, 698 (S.D.N.Y.1975). On the other hand, the allegations supporting a claim of a conspiracy to defraud must be particular enough to give the defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir. 1978). This the Amended Complaint fails to do.

In light of this conclusion, the court need not reach the issue of the sufficiency of the conspiracy claim under Fed.R.Civ.P. 12(b)(6).

**16.** *See* note 10 *supra*.

**17.** *Id.*

**18.** The Rule 10b–5 claims discussed in the text preceding this footnote are contained in Count I of the Amended Complaint.

**19.** Pursuant to § 12(2), any person who offered or sold a security to an investor can be liable to him if that person made a material misrepresentation or omission and cannot satisfy the reasonable care defense. *See generally Barnes v. Osofsky*, 373 F.2d 269, 272 (2d Cir. 1967). Although the Amended Complaint refers to Section 12 without identifying a subsection thereof, the Troyers' claim is apparently asserted under Section 12(2), rather than section 12(1), because Section 12(1) involves only violations of Section 5 of the Securities Act of 1933.

**20.** Jones has not raised the statute of limitations issue in its motion to dismiss the Amended Complaint. However, by a letter dated October 17, 1978, Jones did add such a defense to its motion to dismiss the original Complaint. The issue will be treated as if Jones did raise it, so that the discussion in the text accompanying this footnote applies to Jones as well as to the other defendants.

also contend that the pleadings do not comply with Rule 9(b), Fed.R.Civ.P. For the reasons stated above, the court rejects this contention, except that claims based on misrepresentations, as indicated above, are dismissed for failure to state the time and place at which those misrepresentations occurred.

Discovery shall be completed 90 days after the date of this opinion. The pre-trial order and briefs shall be submitted to this court within two weeks after the completion of discovery.

IT IS SO ORDERED.