**Ronald HART, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**INTERNET WIRE, INC. and BLOOMBERG, L.P., Defendants.**

**No. 00 CIV. 6571(MP).**

United States District Court, S.D. New York.

Oct. 3, 2001.

---

Schatz & Nobel, P.C. (Patrick A. Klingman Andrew M. Schatz Jeffrey S. Nobel, of counsel), Hartford, CT, for Plaintiffs.

Latham & Watkins (Hon. Kenneth Conboy Elena C. Norman, of counsel), New York, for Defendant Internet Wire, Inc.

Willkie Farr & Gallagher (Richard L. Klein Thomas H. Golden, of counsel), New York, for Defendant Bloomberg L.P.

Latham & Watkins (Robert W. Perrin, of counsel), Los Angeles, CA, for Defendant Internet Wire, Inc.

### OPINION AND ORDER

MILTON POLLACK, Senior District Judge.

In an Opinion and Order dated June 14, 2001 this Court dismissed Plaintiffs' Class Action Amended Complaint against both defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure with leave to replead within twenty days should Plaintiffs deem they can consistently therewith frame a sufficient complaint. By letter dated July 2, 2001, Plaintiffs notified Defendants' counsel that no new allegations were to be made against Defendant Internet Wire, Inc., and, therefore, in the view of Counsel for Plaintiffs, Internet Wire need not file another Motion to Dismiss.

On July 2, 2001, Plaintiffs sent a copy to Counsel for each Defendant of Plaintiffs'

Second Amended Complaint, stating in a letter to them:

> Although the Second Amended Complaint makes new allegations with respect to Bloomberg, to which it will need to respond at this stage of the pleadings, it makes no new allegations against Internet Wire, Inc. Therefore, the Court's decision remains in force with respect to Internet Wire, and Internet Wire need not file another Motion to Dismiss. Please let us know if you would like us to do anything in reference to the Court concerning Internet Wire.

On July 5, 2001, Plaintiffs filed their Second Amended Class Action Complaint that names both Internet Wire and Bloomberg as defendants. Both Defendants now move to dismiss the Second Amended Class Action Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. All references to Plaintiffs' Complaint herein are only to the Second Amended Class Action Complaint, unless otherwise noted.

## I. *The Second Amended Complaint*

On August 25, 2000, Defendants were the unwitting victims of a criminal hoax created to manipulate the stock of Emulex Corporation ("Emulex").

Defendant Internet Wire is a private corporation that distributes corporate news, including press releases. Defendant Bloomberg is a world-wide publisher of financial, legal, and business news to financial professionals via a network of desktop computer terminals. It regularly re-transmits to the general public press releases prepared by professional agencies such as co-Defendant Internet Wire, typically without editorial revision.

One, Mark Simeon Jakob, a California resident, on August 24, 2000, who had sold shares of Emulex common stock "short" and had incurred a paper loss of over $97,000, was facing a margin call from his stock broker, and had decided to try to cause the price of Emulex stock to fall dramatically. Jakob, a previous employee of Internet Wire who knew its ropes, sent an electronic mail to Internet Wire from an electronic mail account that Jakob had established that evening at Yahoo!. The e-mail contained a fake press release and was delivered under the false name of "Ross Porter" of the fictitious public relations firm of "Porter and Smith" on the account of "porterandsmith@yahoo.com." Jakob's e-mail instructed Internet Wire to issue a press release that was attached to his e-mail, and it stated that "[t]his release is extremely important and I would like it to go out ... at 9:30 a.m. EST, 6:30 a.m. PST, tomorrow morning, Friday, August 25th."

The "Fake Press Release" was distributed by Internet Wire to major news services including Defendant Bloomberg which were duped into publishing and distributing the release on August 25, 2000 at about 9:30 a.m. EST (6:30 a.m. PST) simultaneous with the opening of the Eastern market for trading in Emulex securities. The news services had no role in the authorship or content of the press release.

The Fake Press Release announced that Emulex said that the company's President and Chief Executive Officer had resigned, that the SEC was conducting a formal investigation of accounting irregularities at the company, and that the company would revise its fourth quarter results to reflect losses rather than profits.[1]

---

1. In the "Safe Harbor" Statement under the Private Securities Litigation Reform Act ("PSLRA"), the release stated that "The company wishes to caution readers that a number of important factors could cause results to

The Fake Press Release was entirely false. Emulex had not been involved in any way with the Fake Press Release. Emulex was not revising its financial results. Emulex's CEO had not resigned and there was no SEC investigation of Emulex.

At 9:30 a.m. EST on August 25, 2000, Emulex stock opened in the market at $110.6875 per share. Commencing at about 10:15 a.m. EST the price of Emulex stock, which had been trading at approximately $103–$106 per share, "thereby indicating [according to the Complaint] that investors largely questioned and discounted the credibility of the contents of the Fake Press Release," but Emulex stock began "a precipitous decline immediately following the issuance of the Bloomberg News Statements" that repeated the key facts in the Fake Press Release, and the price of the stock crashed "to a price of below $44 per share by 10:28 a.m." (Complaint ¶ 32).

At about 10:29 a.m. EST "NASDAQ issued a halt in all trading in Emulex stock." Emulex had noticed and branded the news release as a hoax and several news organizations published that repudiation immediately. Some time later, trading in the stock was resumed and the stock traded at $120 per share, and went as high as $130 per share before closing at $105 per share on August 25, 2000. (Complaint ¶ 35).

This Class Action is brought on behalf of all persons who sold common stock or call options in Emulex or purchased put options in Emulex on August 25, 2000 after the opening of the market until trading was halted.

The Complaint does not charge either Defendant with and plaintiffs' counsel absolved the defendants from any fraudulent motive or intent to commit fraud, or to differ materially from those in the state-

participate in the criminal hoax, or knowingly to deceive anyone relying on the news, but the Class asserts lack of care and absence of verification of the story before its republication.

It was conceded on the argument by counsel for plaintiffs that Bloomberg did not owe the market investors in the Class any fiduciary or comparable duty or contract obligation to monitor the source of its public statements. The allegations of the Complaint are speculatory nonetheless and borne of hindsight and fall far short of asserting any guilty knowledge on the part of either Defendant of the truth or any intent to deceive readers or investors.

The PSLRA made it compulsory to require detailed factual pleading of the essential grounds for a federal securities fraud suit. Nonetheless, the Second Amended Complaint again relics only on expansive charges of lack of care and advance verification of the publications (which had no earmarks of probable falsity) and recites a litany of so-styled "red flags" which might have deterred defendants from public distribution of the press release.

The PSLRA sought to curb abusive class action stock market litigation and the filing of cases largely to obtain hoped-for discovery of a legal basis for speculative claims and to head off unwarranted settlements as a price from a target of oppressive litigation.

In the landmark decision for this Circuit, adhering to Supreme Court doctrine it was expressed that "no private cause of action for damages will lie under 10(b) and Rule 10b–5 in the absence of any allegation of 'scienter'-intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), *quoted in Novak v.*

ments."

*Kasaks,* 216 F.3d 300, 306 (2d Cir.2000) where the Circuit Court articulated the requisite statutory standard applicable here, which is set forth as follows:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C. § 78u–4(b)(2).

*Novak,* 216 F.3d at 306.

■ The basic pleading standard for scienter in this Circuit requires expression of the facts from which to infer fraud and fraudulent intent. *Novak,* 216 F.3d at 311, where it is stated:

> Accordingly, we hold that the PSLRA adopted our "strong inference" standard: In order to plead scienter, plaintiffs must "state *with particularity* facts giving rise to a strong inference that the defendant acted with the required state of mind." (Emphasis supplied).
>
> . . . .
>
> Therefore, in applying this standard, district courts should look to the cases and factors discussed in Section I.B. 1 above to determine whether plaintiffs have pleaded facts giving rise to the requisite "strong inference." These cases suggest, in brief, that the inference may arise where the complaint sufficiently alleges that the defendants: (1) *benefitted* in a concrete and personal way from the purported fraud, see supra at page 307; (2) engaged in deliberately *illegal behavior, see supra* at page 308; (3) *knew* facts or had access to information suggesting that their public statements were not accurate, *see supra* at page 308–09; or (4) failed to check infor-

mation they had a *duty to monitor, see supra* at pages 308–09. (Emphasis supplied).

*Novak,* 216 F.3d at 311.

Because Plaintiffs' complaint fails to plead recklessness inferring fraud and fraudulent intent they have failed to allege scienter and suit should not have been brought.

■ The Second Amended Complaint seeks to bolster this inadequate charge of federal securities fraud on the notion that red flags in the content and submission of the Fake Press Release, when disregarded by Defendants, rose to a sufficient case of fraudulent intent to participate in a hoax. However, as each flag cited is examined, separately and in unison, they fall short of spelling a sufficient claim of federal securities fraud or intent to participate in a criminal hoax if they were disregarded.

As pointed out in this Court's Opinion of June 14, 2001 in dismissing the predecessor to the present Second Amended Complaint the Second Circuit has rejected the notion that the red flags theory espoused by these Plaintiffs and the failure to investigate such flags as are cited here simply does not amount to securities fraud. Opinion at 11, citing *Chill v. GE Co.,* 101 F.3d 263, 268 (2d Cir.1996) ("failure to heed the [host of] red warning flags" did not amount to securities fraud); *see also Bradford Sec. Processing Servs., Inc. v. County Fed. Sav. & Loan Ass'n,* 474 F.Supp. 957, 965 (S.D.N.Y.1979) (rejecting the notion that error alone is sufficient to support any inference that defendant "must have known" of inaccuracy); *Feasby v. Industri–Matematik Int'l Corp.,* No. 99 Civ 8761(HB), 2000 WL 977673 (S.D.N.Y. July 17, 2000) (rejecting "that defendant should have turned up" truthful information as grounds for securities fraud claims); *Goldman v. McMahan, Brafman, Morgan &*

*Co.*, 706 F.Supp. 256, 261 (S.D.N.Y.1989) (what defendant "should have ... independently confirmed and verified" is insufficient to support securities claim based on recklessness). As this Court observed previously (Opinion at 11, citing *Troyer v. Karcagi*, 476 F.Supp. 1142, 1152 (S.D.N.Y. 1979)), "if recklessness means something more culpable than negligence, as it must, then an allegation that a defendant merely 'ought to have known' is not sufficient to allege recklessness." Plaintiffs have not added anything new to the analysis. None of the red flags suffice to show a plausible motive or intent to defraud investors.

■ The flags do not spell a hoax in the making; (Defendants did not add anything to the content of the release submitted to them); the content of the release gave no meaningful hint of the falsity thereof; to disregard any or all of the red flags does not spell any conscious intent on the part of the publishers to commit fraud; even with twenty-twenty hindsight the flags do not indicate that their disregard indicates knowledgeable participation in a hoax and intent to commit fraud by publication of the release. Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to withstand a motion to dismiss. *Faulkner v. Verizon Communications*, 2001 WL 880851 at *6 (S.D.N.Y. Aug.3, 2001) (Connor, J.).

The basic pleading standard for scienter that prevailed in the Second Circuit before the enactment of the PSLRA and the standard thereunder was authoritatively reviewed for the Second Circuit in the landmark decision authored by Chief Judge John M. Walker, Jr. in *Novak v. Kasaks*, 216 F.3d 300 (2d Cir.2000) and reiterated immediately thereafter in *In re Carter-Wallace Inc. Securities Litigation*, 220 F.3d 36 (2d Cir.2000).

■ The pre-PSLRA pleading standard for identifying the recklessness sufficient to plead scienter that sufficed was "to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements." *Novak*, 216 F.3d at 308. The prescribed state of mind to plead scienter "would entail concrete benefits that could be realized by one or more of the false statements and wrongful disclosures alleged." *Id.* at 307. For example, "Plaintiffs could not proceed based on motives possessed by virtually all corporate insiders, including: (1) the desire to maintain a high corporate rating ...." *Id.* "Rather, plaintiffs had to allege that defendants benefitted in some concrete and personal way from the purported fraud." *Id.* at 308. The facts to be pleaded had to show "strong evidence of conscious misbehavior or recklessness on the part of defendants. Intentional misconduct is easily identified since it encompasses deliberate illegal behavior ...." *Id.* *Novak*, *cited supra*, adopted the pre-PSLRA Second Circuit standard for pleading scienter, and required allegations that gave rise to a "strong inference of fraudulent intent." Intent is the required state of mind for liability under § 10(b). Recklessness to be actionable must give rise to a strong inference of fraudulent intent.

In short, to state a claim, a complaint to be sufficient must allege that defendants acted with the required state of mind, viz., scienter, which is "intent to deceive, manipulate, or defraud". *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1301 (2d Cir. in banc). The Second Amended Complaint herein does not qualify.

The Second Amended Class Action Complaint is dismissed, with prejudice and costs.

So Ordered.